**In re Raymond Norris McNEIL and Carolyn Jean McNeil, Debtors.**

**Bankruptcy No. 80–30126.**

United States Bankruptcy Court,
S. D. New York.

Aug. 21, 1981.

Harry Gurahian, New York City, for movant, Bank of Commerce; Ernst L. Bendix, New York City, of counsel.

Herbert L. Ruttenberg, New Windsor, N. Y., for debtors.

## DECISION ON MOTION TO VACATE ORDER REOPENING CASE

JEREMIAH E. BERK, Bankruptcy Judge.

This is a motion by the BANK OF COMMERCE pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rule 924,[1] 411 U.S. 1102, to vacate an *ex parte* order dated February 6, 1981 reopening the case of the joint Chapter 7 debtors.

## FACTS

The basic facts as determined from argument on the motion are not in dispute. On April 1, 1980 the debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Reform Act of 1978. In Schedule A–2 they listed the Dartmouth Plan as a disputed secured creditor in the sum of $8,583.30. The usual notice of the commencement of the case was forwarded by the Court to the Dartmouth Plan, as well as to all other scheduled creditors. The case proceeded as a no-asset case. On June 16, 1980 the debtors were granted a discharge and on July 22, 1980 an order was entered closing the case. Had this been an asset case, the last day for filing proofs of claim would have been November 3, 1980.

Thereafter, by application dated January 28, 1981 the debtors sought to reopen their Chapter 7 case to amend Schedule A–2 to add the Bank of Commerce (hereinafter "BANK") as a secured creditor. The application stated that the Bank had been inadvertently omitted from the original schedules, that all payments on the account were made to the Dartmouth Plan at 2 Old Country Road, Carle Place, New York, the creditor listed in the petition, and that the debtors never received a copy of the assignment of the debt from the Dartmouth Plan to the Bank. It appearing from the *ex parte* application to reopen that the debtors had no knowledge or notice of the assignment from the Dartmouth Plan to the Bank, an order was entered on February 6, 1981 pursuant to Bankruptcy Code § 350(b) and Bankruptcy Rule 515 reopening the case and allowing the amendment. The Bank by notice of motion dated February 13, 1981 then brought the instant motion to vacate and set aside the February 6, 1981 order.

As appears from the papers submitted on the motion, the obligation in question arose as a result of the debtors entering into a retail installment obligation on June 13,

---

1. Section 405(d) of Title IV of the Bankruptcy Reform Act of 1978, Pub.L.No.95–598, 92 Stat. 2685, makes applicable the Rules of Bankrupt-cy Procedure in effect on September 30, 1979, to the extent not inconsistent with the Bankruptcy Reform Act of 1978.

1978 with Bostac Sales Corp., d/b/a Hendon Pools, for certain home improvements totaling $10,748.64. Shortly thereafter, on July 3, 1978, the retail installment obligation was assigned by Bostac Sales Corp. to the Dartmouth Plan, Inc. (the first assignment). On July 5, 1978 pursuant to the terms of the retail installment obligation, the debtors were requested and did execute as further security for the obligation, a second mortgage in favor of the Dartmouth Plan on their principal residence located in the Town of Montgomery, Orange County, New York. The debtors dispute the validity of this mortgage.

Two days later, on July 7, 1978, the debt, as well as the mortgage, was further assigned by the Dartmouth Plan to the Bank (the second assignment). Prior to the first assignment by Bostac Sales, Corp. and the execution of the mortgage by the debtors on July 5, 1978, the debtors were in fact notified by the Dartmouth Plan by letter dated June 22, 1978 that the "retail installment obligation to finance your property modernization will be assigned by the Dartmouth Plan to the above named bank," the Bank of Commerce. Sometime after the second assignment, the debtors received a coupon payment book from the Bank, and beginning in September, 1978, and continuing through September, 1980, the debtors made a series of 24 monthly payments, each payment by check made to the order of the "Dartmouth Plan/Bank of Commerce." [2]

In November, 1980, the Bank, seemingly without notice or knowledge of the prior bankruptcy case, instituted an action on the debt in the Supreme Court of the State of New York, Orange County, to enforce the now-defaulted retail installment obligation. The debtors have asserted their discharge in bankruptcy as a complete defense in that action. The state court action apparently precipitated the debtors' application to reopen the Chapter 7 case.

## ISSUE

The sole issue before the Court on this motion to vacate and set aside the February 6, 1981 order is whether on the facts subsequently developed the Court abused its discretion in granting the debtors' application to reopen the case.[3]

## DISCUSSION

■ Section 350(b) of the Bankruptcy Code, 11 U.S.C. § 350(b), is a codification of § 2(a)(8) of the former Bankruptcy Act and Bankruptcy Rule 515, and provides:

"(b) A case may be reopened in the Court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

This Section, similar to its predecessor, leaves this matter to the sound discretion of the Court based upon the facts of each case. See *In re Castleberry*, 3 BCD 6 (Bankr.Ct. N.D.Va.1977); *In re Broomfield*, 3 BCD 760, 761 (Bankr.Ct.S.D.N.Y.1977); 2 *Collier on Bankruptcy*, ¶ 350.03 (15th ed. 1981).

The Bank argues that the Court as a matter of law and fact should not exercise its discretion to allow the debtor to reopen the case. In support of this position the Bank cites *Milando v. Perrone*, 157 F.2d 1002 (2d Cir. 1946), where our Circuit Court reversed an order of the District Court allowing the reopening of the bankruptcy case to add a judgment creditor who had been inadvertently omitted from the original schedules due to the bankrupt's lack of knowledge of the judgment. The Circuit Court in reversing the order reopening the case considered whether the ultimate relief sought could be afforded the bankrupt or was precluded by § 17(a)(3) of the former

---

2. It appears that the debtors may have forwarded one of these payments to the Bank. The other 23 payments were mailed to the Dartmouth Plan.

3. It should be noted that neither the Bank nor the debtors have filed a complaint under Bankruptcy Code § 523(a)(3) to determine the dischargeability of the debt in question, and that issue is not before the Court on this motion. The present attempt by the debtors to reopen their Chapter 7 case to now amending the Bank as a creditor would, in and of itself, appear to be a meaningless act since this later amendment would not relate back to an earlier date for purposes of Bankruptcy Code § 523(a)(3).

Act. Finding that the time to file claims had "long since elapsed" and not finding any basis for exercising the Court's equitable powers, especially in view of the specific language of § 17(a)(3), no basis for granting the relief requested existed.

The Bank also cites the case of *In re Pierce*, 150 F.2d 529 (E.D.N.Y.1957) in which the District Court, finding *Milando* controlling, refused to allow the bankrupt's application to reopen the case to amend his schedules to correct an erroneous address after the claims filing bar date had passed. In addition, *In re Broomfield, supra*, decided by former Bankruptcy Judge Lesser, likewise found *Milando* controlling and refused to reopen the case to allow the bankrupt to amend the schedules to correct an erroneous address after the claims filing bar date had passed, notwithstanding that the case was a no-asset case and creditors had been advised that it was unnecessary to file claims.

■ Ordinarily the failure to properly and timely schedule a creditor will result in that debt being excepted from discharge. This was so under the former Bankruptcy Act,[3] and remains so today.[4] Bankruptcy Code § 523(a)(3), successor to former Bankruptcy Act § 17(a)(3), provides:

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4) or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim

and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request; ...

■ Since the time for filing proofs of claim has passed [there is no allegation that this debt is otherwise nondischargeable under § 523(a)(2), (4) or (6)], reopening the case to amend the schedules to now add the Bank as a creditor will not affect the dischargeability of the debt since such amendment would not relate back to a time prior to the claims filing bar date for purposes of § 523(a)(3)(A). If the debtors "purpose, to bar the creditor's suit, cannot be effected, the reopening and amendment are useless and should not be allowed." *Milando v. Perrone, supra* at 1003.

## I.

■ The debtors continue to allege, [and apparently hope to prove by commencing in this Court an adversary proceeding under § 523(a)(3)], that they had no knowledge of the assignment from the Dartmouth Plan to the Bank to permit timely scheduling of the correct creditor. It is unlikely that the debtors would prevail after trial on this allegation since the facts ascertained on this motion show (1) that they received the letter of June 22, 1978 from the Dartmouth Plan advising of the intended assignment, (2) that they used the Bank's coupon payment book to make all monthly payments, and (3) that all payments were by check made payable to "Dartmouth Plan/Bank of Commerce." These facts are sufficient to charge them with the duty of inquiry concerning the assignment. *In re Osofsky*, 50 F.2d 241, 243 (S.D.N.Y.1931), a case decided under the former Bankruptcy Act dealing with a similar allegation, observed:

In a case of this sort, there is a clashing between the two purposes sought to be accomplished by the Bankruptcy Act, a

---

3. Bankruptcy Act § 17(a)(3), 11 U.S.C. § 35(a)(3) (1979); Bankruptcy Rule 108(a), 411 U.S. 1007.

4. Bankruptcy Code § 523(a)(3) and § 521(1); 11 U.S.C. § 523(a)(3) and § 521(1) (1979).

discharge from debts of the honest debtor who is engulfed and an equitable distribution of his estate among his creditors. To hold that the bankrupt is not discharged is to defeat in part the former purpose. To hold that he is discharged is to deprive the creditor of his right to participate in the administration of the estate and in the proceeds. In this dilemma the law favors the bankrupt. It does not call upon him to run down all his obligations and name the present holders of them, at the risk of having his discharge held ineffective against them. Such a task would often be a formidable one. But this does not mean that the bankrupt may list the original creditor, when he knows, or *ought to know*, that another is the present holder of his obligation... (emphasis added)

Even if the debtors could establish that they had no actual knowledge of the assignment, such would be immaterial in the absence of a showing of due diligence to find out who was the owner of the obligation at the time their petition was filed. *Lansing Liquidation Corporation v. Heinze*, 184 App. Div. 129, 171 N.Y.S. 738 (1918). Accordingly, as to this allegation no relief could be accorded to the debtors by reopening their case.

## II.

However, the debtors also imply [and would apparently intend to prove after commencing an adversary proceeding in this Court under § 523(a)(3)] that the Bank received timely notice of their bankruptcy case from its assignor, the Dartmouth Plan. If such notice can be established under the exception contained in § 523(a)(3)(A), the debt would nevertheless be discharged, notwithstanding that the Bank was not timely scheduled.

■ The determination of dischargeability under § 523(a)(3), unlike such determinations under § 523(a)(2), (4), or (6), is of the type over which the Bankruptcy Court has concurrent, but not exclusive jurisdiction.

Conceivably, the debtors would prefer to litigate this issue in the federal bankruptcy forum where discovery devices, rules of evidence and case law may be more compatible with their objectives than those pertaining in the state courts. Perhaps they perceive an enhanced likelihood of success in defeating the Bank's claim if this issue were to be determined by the court which granted their discharge and where they may hope to invoke general equity powers to protect their discharge and fresh start. In asserting their discharge in bankruptcy as a defense to the Bank's state court action on the debt, the debtors have, in effect, chosen to litigate in that forum the issue of whether or not the Bank received timely notice of their bankruptcy case. 3 *Collier on Bankruptcy*, ¶ 523.13[9] (15th ed. 1980), states:

> Should a creditor bring suit in a court other than a bankruptcy court on a debt which he contends is excepted from discharge under section 523(a)(3), the local court would determine the question of dischargeability. The debtor, however, may remove the case to the bankruptcy court which would then have jurisdiction unless it remands the case to the local court.

■ Removal of a pending state court action to the Bankruptcy Court is authorized by 28 U.S.C. § 1478(a) and may only be had during the pendency of the bankruptcy case when jurisdiction conferred by 28 U.S.C. § 1471(a) and (c) exists in the Bankruptcy Court. Since the state court action was commenced after the bankruptcy case had been closed, removal is not possible, unless perhaps the case can be timely [5] reopened for that purpose. It is sufficient to note that at no time have the debtors sought removal.

■ That the debtors may now prefer to litigate the reach of their discharge in the bankruptcy forum, either by removal of the entire state court action or by filing a complaint in this Court under § 523(a)(3), is insufficient to "accord relief" or to consti-

---

**5.** Interim Bankruptcy Rule 7004(a)(2) generally requires the removal application to be filed within 30 days of commencement of the state court action.

tute "cause" within the meaning of Bankruptcy Code § 350(b).

## CONCLUSION

The motion of the Bank of Commerce pursuant to Rule 60(b) of the Federal Rules of Civil Procedure is granted. The Order of this Court dated February 6, 1981 reopening the debtors' case is hereby vacated and set aside.

It is SO ORDERED.