In the Matter of Donald K. DAVIDSON, Jr. and Michelle Davidson, Debtors.

LA BATE & CONTI, INC., Plaintiff,

v.

Donald K. DAVIDSON, Jr. and Michelle Davidson, Defendants.

Bankruptcy No. 80–05322.
Adv. 80–0532 TS.

United States Bankruptcy Court, D. New Jersey.

Nov. 14, 1983.

James J. Pierce, Toms River, N.J., for debtors.

Milton M. and Adrian M. Unger by Adrian M. Unger, Newark, N.J., for plaintiff.

AMEL STARK, Bankruptcy Judge:

This court issued an ex parte order reopening this case, which had been closed in August 1981, in order to allow the debtors to amend their schedules to include a creditor whose address had been inadvertently omitted from their original schedules. The creditor challenges this order.

*Facts and Procedural History*

1. In 1973, Donald K. Davidson, Jr. and Michelle Davidson ("the debtors") purchased a tavern in the name of their corporation, Donald Davidson Corp.

2. In 1974, on a four-year installment plan, they purchased equipment for the tavern from La Bate & Conti, Inc. ("the creditor") through their corporation, and personally guaranteed the debt.

3. Financial difficulties compelled them to close the tavern in November 1978 and forfeit all stock in the corporation to the original seller of the tavern.

4. At the time the tavern closed, the debtors had paid to the creditor $21,948.88 of the equipment's total contract price of $37,997.28, which included finance charges and services charges. The creditor failed to

repossess the equipment but eventually recovered $14,000 for it, of which $4,944.47 paid for the creditor's attorney fees.

5. The creditor filed a complaint against the corporation and the debtors in March 1979, served the debtors in June 1979 and obtained a default judgment against the debtors for $52,071.01 on February 15, 1980 in the Superior Court of New Jersey, Law Division, Essex County.

6. The creditor issued a writ of execution in September 1980, for which a sheriff levied on the debtors' personal belongings in October 1980.

7. The debtors moved to another residence in December 1980.

8. On December 11, 1980, the debtors filed a petition under chapter 7 of the United States Bankruptcy Code. Their statement of liabilities listed the debt to the creditor as an unsecured claim, but gave no address for the creditor. The creditor received no notice and allegedly had no actual knowledge of the bankruptcy petition until February 7, 1983.

9. The notice sent to creditors on December 17, 1980, and received by most on December 18, 1980, informed the creditors pursuant to former Bankruptcy Rule 203(b) that they need not file claims because no dividend from the estate was anticipated. Listed liabilities totaled $144,600, listed assets totaled $4,600, and the trustee made no distribution to creditors. This court issued a discharge of the debtors on April 6, 1981, and issued an order closing the case on August 12, 1981.

10. On January 27, 1983, the creditor served a Notice of Application for Wage Execution on Mr. Davidson. The debtors' attorney informed the creditor's attorneys of the bankruptcy and discharge on February 7, 1983.

11. On February 28, 1983, the debtors applied to this court to reopen the case and to amend the list of creditors in order to be discharged of their liability to the creditor. On the same day, this court issued an ex parte order to that effect, and the defend-ant amended Schedule A–3 to include the creditor's address.

12. The creditor filed a complaint on April 14, 1983, asking this court to vacate the order reopening the estate and declare its judgment excepted from discharge.

*Discussion*

The debtors seek to be discharged of their debt to the creditor. If the creditor had actual knowledge of the petition prior to the closing of the estate, the debt would be discharged without reopening the case, 11 U.S.C. § 523(a)(3)(A), but the debtors have adduced no evidence of such actual knowledge. Although it is suspicious that the creditor made no attempt to enforce its judgment throughout all of 1981 and 1982, this is satisfactorily explained by the minimal success it had encountered through previous attempts to satisfy its judgment. It is believable that the creditor was unaware of the petition but chose to delay execution until the debtors had acquired assets worth levying on. In order to be discharged, therefore, the debtors must reopen their case and amend the schedules to include the creditor's address.

The creditor argues on two grounds that this court should vacate the ex parte order which reopened the case and allowed amendment of schedules. First, it contends, section 523(a)(3)(A) bars this debt from being discharged even after amendment of schedules, and the reopening should therefore be denied as it would serve no purpose. Second, even if discharge would be allowed, the reopening should be denied because the debtors must show "exceptional circumstances" to justify the reopening, and they have not done so.

I.

■ Under the rule of *Milando v. Perrone,* 157 F.2d 1002 (2d Cir.1946) and its progeny, *e.g., In re McNeil,* 8 B.C.D. 114, 13 B.R. 743 (Bkrtcy.S.D.N.Y.1981), a debtor's application to reopen a case to amend schedules should be denied after the end of the usual six-month period for filing proofs of claim. Former Bankr.R. 302(e);

Bankr.Act § 57(n).[1] The debtor in *Milando* also had inadvertently omitted a creditor and sought to reopen the case to amend his schedules and have the debt discharged. The court denied the application because the lateness of notice to the creditor would bar the debt from being discharged. Section 523(a)(3)(A), like its predecessor at issue in *Milando,* bars a debt from being discharged if it was not properly scheduled in time to allow the creditor to file a timely proof of claim. 11 U.S.C. § 523(a)(3)(A); Bankr.Act § 17(a)(3). Although the six-month period had passed, the district court had allowed reopening and discharge because "the creditor could not be harmed where the estate showed no assets," 157 F.2d at 1004, but the Second Circuit held that courts may not disregard the "clear language" of the statute, except perhaps to prevent a fraud or injustice. Finding no injustice in forcing the debtor to bear the results of his own error, the court denied the application to reopen.

The *Milando* rule does not apply here for two reasons. First, the six-month rule of former Rule 302(e) does not apply to this case. The creditors were notified pursuant to former Rule 203(b)[2] that they need not file claims because no non-exempt assets were available, and that they would be permitted to file claims if and when additional assets were discovered. The Seventh Circuit recently held that in this circumstance, "the time for filing the claim had not passed," so that even the literal terms of section 523(a)(3)(A) do not bar this debt from being discharged if it is now added to the schedules. *In re Stark,* 717 F.2d 322, 3 Bankr.L.Rep. (CCH) ¶ 69,392 (7th Cir.1983), aff'g 26 B.R. 178 (C.D.Ill.1982). *See also In re Ratliff,* 10 B.C.D. 352, 354, 27 B.R. 465 (Bkrtcy.E.D.Va.1983); *Callaham v. Snider* (*In re Callaham* ), 3 B.C.D. 501, 502 (Bkrtcy. D.Or.1977).

Second, the Third Circuit has stated in dictum that even when the six-month rule would, by its terms, apply, courts of bankruptcy have discretion to discharge a debt in spite of the rule when no harm results to the creditor. *Fourteenth Ave. Security Loan Ass'n v. Squire,* 96 F.2d 799, 800 (3d Cir.1938) (debtor was unaware of judgment against him).[3] This dictum was followed by the Fifth Circuit in *Robinson v. Mann,* 339 F.2d 547, 550 (5th Cir.1964) (attorney erroneously believed debtor was not liable for unlisted debt). The court explained:

> That section is addressed to creditors, not to the bankrupt. Its primary purpose is to prod creditors to seasonably present their claims, not to force bankrupts to seasonably present their amendments. A bankruptcy court is a court of equity, and in an appropriate case its inherent equity powers may be invoked to allow amendment after six months. 339 F.2d at 550.[4]

The Seventh Circuit similarly held in *In re Stark, supra,* that even if the six-month rule applied it would not bar the discharge in an appropriate case:

> [S]ection 523(a) should not be mechanically applied to deprive a debtor of a discharge in a no asset case where there is no showing of fraud or genuine harm to the creditors, [and] the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice.

*Robinson* has been followed in numerous lower-court decisions;[5] those cases follow-

---

**1.** Under current Bankr.R. 3002(b), effective August 1, 1983, the usual period for proofs of claim has been reduced to 90 days.

**2.** Former Bankr. 203(b) has been replaced by current Bankr.R. 2002(e).

**3.** *Cf. In re Gershenbaum,* 598 F.2d 779, 783 (3d Cir.1979), in which the court held that schedules may be amended even after the six-month period has run, but declined to decide whether

the amendment would result in discharge of the newly listed debt.

**4.** Both the Third Circuit case and the Fifth Circuit case involved amendments to schedules in cases which had not yet been closed, but they are not distinguishable on this ground; the six-month rule applies regardless of whether the case has been closed. *See In re Jordan,* 6 C.B.C.2d 1222, 21 B.R. 318, 321–22 (Bkrtcy.E. D.N.Y.1982).

**5.** *See infra* n. 8.

ing *Milando* are primarily confined to the Second Circuit.[6]

## II.

■ After concluding that this court has power to reopen the case, the question becomes whether it is appropriate in this instance to exercise that power. The debtors' goal, to be discharged of their debt to the creditor, is a proper purpose for which to reopen the case because it will accord relief to the debtor. Section 350 of the Bankruptcy Code states:

A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause. 11 U.S.C. § 350.

*See* Bankr.R. 5010. But debtors are not necessarily entitled to reopen a case whenever it will benefit them; they must establish at least some justification for the reopening. Bankruptcy Rule 9024 reveals that Rule 60(b) of the Federal Rules of Civil Procedure applies to a motion to reopen a case, and Rule 60(b) states:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment.

*See* 7 *Moore's Federal Practice* § 60.22(2) at 60–175 (1983), ("60(b) is a remedial rule to be liberally construed").

■ Most courts that have considered when a case should be reopened have relied on their equitable powers rather than on Rule 60(b), and have applied the "exceptional circumstances" test announced in *Robinson v. Mann, supra. See infra* n. 8. I decline to require that the debtor show "exceptional circumstances," and instead adopt a test similar to that recently put forth by the Seventh Circuit in *In re Stark, supra:* in a no-asset bankruptcy when notice has been given pursuant to Bankruptcy Rule 2002(e), a debtor may reopen the estate to add an omitted creditor when the creditor has not been irrevocably harmed and there is no evidence of fraud, intentional design, or reckless disregard for the accuracy of the schedules. *See also In re Callaham, supra* p. 5. Although this may be interpreted as requiring "exceptional circumstances"[7] I decline to adopt that language because almost all cases[8] to allow a reopening[9] under that test[10] have required the debtor to

---

**6.** *In re Jordan, supra* n. 4 (and cases cited); *In re McNeil, supra* p. 4; *see In re Iannacone,* 9 B.C.D. 571, 21 B.R. 153 (Bkrtcy.D.Mass.1982) (1st Circuit); *but see In re Fortin,* 3 B.C.D. 72 (Bkrtcy.S.D.N.Y.1972) (following *Robinson v. Mann*).

**7.** In *In re Benak,* 374 F.Supp. 499, 500 (D.Neb. 1974), the court stated: "The exceptional circumstances usually require that the case be a no-asset one, that there be no fraud or intentional laches, and that the creditor was omitted through mistake or inadvertence." The court did not grant the reopening, however, but remanded for consideration of these factors.

**8.** *In re Ratliff, supra* p. 5 (unaware of creditors' cause of action); *In re Traub,* 26 B.R. 296 (Bkrtcy.W.D.Ky.1982) (creditor had not attempted collection for four years before and two years after debtor's petition); *In re Souras,* 19 B.R. 798, 801 (Bkrtcy.E.D.Va.1982) (omission was "understandable" because of three- to four-year lapse between abandoning lease for which debtors remained liable and filing peti-

tion); *In re Baker,* 18 B.R. 131 (Bkrtcy.W.D.Ky. 1981) (similar to *Traub*); *In re Holloway,* 10 B.R. 744, 745 (Bkrtcy.D.R.I.1981) (unaware of debt due to creditor's delay in pursuing collection); *In re Cafferky,* 3 B.C.D. 763, 765 (Bkrtcy. E.D.Tenn.1977) (debtor believed he was not personally liable for omitted debt).

**9.** In cases not involving amendment of schedules, debtors have been permitted to reopen cases to avoid judicial liens without presenting an excuse for their original failure to do so. *Stephenson v. G.M.A.C. (In re Stephenson),* 19 B.R. 185 (Bkrtcy.M.D.Tenn.1982); *but see In re Williams,* 17 B.R. 204 (Bkrtcy.W.D.Ky.1982). But the analogy is weak; timely notice of the petition is more important to creditors than timely notice of the intent to avoid a lien.

**10.** Although *In re Stark, supra,* did not require either "exceptional circumstances" or a justification for the original omission, it did note that the debtors had believed their unlisted debt would be paid by insurance. *In re Callaham, supra,* rejected the exceptional circumstances test and allowed reopening without an explanation for the original error.

show that he was unaware of the debt.[11] For reasons discussed below, this court rejects that requirement.

The *Robinson* court had required "exceptional circumstances appealing to the equitable discretion of the bankruptcy court" because "excessive amendments . . . disrupt and prolong administration of the bankrupt's estate" and defeat the "statutory purpose to achieve speed and certainty in bankruptcy proceedings." 339 F.2d at 550. *Cf. In re Time Sales Finance Corp.,* 474 F.2d 1197, 1201 (3d Cir.1971) (to promote prompt and effective administration of bankrupt estate, hearings should not be reopened to admit additional testimony without excuse). Section 350 of the Bankruptcy Code, *supra,* strongly indicates, however, that "to accord relief to the debtor" is at least, as important as speed and certainty. Although the degree of disruption remains a valid consideration, this suggests that "exceptional circumstances" are not necessary to justify the disruption. In a case such as this, in which a debtor seeks to affect only one creditor, the disruption is slight and is easily outweighed by the need to assure the debtors their fresh start.[12]

■ The second factor which the *Robinson* court and its progeny consider is the debtor's justification for the failure to list the creditor in question,[13] *Robinson,* 399 F.2d at 550. *See supra* n. 8. I hold that the debtor's excuse for the omission is relevant only to prove that the debtor did not intentionally or recklessly avoid listing the debt. Apart from this, requiring a "good excuse" serves only to discourage careless completion of the debtor's schedules. When the omission caused the creditor no significant harm, this is an excessively harsh method of discouraging such carelessness, contradictory to the Code's purpose of relieving the debtor of his past errors and granting him a fresh start, *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Debtors are sufficiently motivated to list all creditors and debts by other incentives: they bear the unnecessary expense of reopening the case to add the creditor and may be liable for attorney's fees expended by the creditor in efforts to collect the debt prior to learning of the petition, *see infra.* Debtors may of course have offsetting incentives in some cases, such as a desire to exclude an aggressive creditor from examination of the debtor or from meetings of creditors. If such motivations for the omission are established, the reopening, amendment and discharge should be denied. But a blanket denial of discharge for debts originally unlisted would be justified only if debtors could significantly profit by failing to list debts; this would warrant the presumption that unlisted, known debts were intentionally omitted. As the opportunity for profit is slight in no-asset cases, the possibility of fraudulent omissions does not justify punishing a debtor for an inadvertent error with the full burden of a pre-petition debt. The debtors in this case fully intended to properly list the debt at issue, but inadvertently omitted the creditor's address.

■ The third factor considered under the Fifth Circuit's exceptional circumstances test, whether the unlisted creditor would be prejudiced by the reopening, is the primary consideration in the test which I apply to this case. The possible sources of harm

---

**11.** The sole exception is *Admire v. Veterans' Administration (In re Admire),* 15 B.R. 405 (Bkrtcy.W.D.Mo.1981).

**12.** Courts have also consider the length of time to have passed since the estate was closed, *In re Benak, supra* n. 7, and since the debtors learned of their omission. In this case, the debtors applied for reopening within one month after learning of their error.

**13.** The debtors have argued that their omission was "understandable," *see In re Souras, supra* n. 8, because they believed that the creditor would repossess the equipment and thereby satisfy their debt, and in addition that the corporation would satisfy their liability. This explanation is unsatisfactory, however. They should have been aware of their liability for the judgment because a sheriff had levied on their personal belongings in order to satisfy the judgment in October 1980. The debtors changed residences and filed their petition just two months later. In addition, their petition did list the judgment for the creditor, omitting only the creditor's address.

to the creditor are (1) that it was excluded from any distribution of dividends, Suppl. Brief of Creditors at 5; (2) that it was "unable to file a proof of claim, examine bankrupts as to their assets or otherwise participate in the administration . . . of the estate," *id.;* in particular, it could not participate in the selection of a trustee or discover grounds for nondischargeability before the evidentiary trail grew cold, *In re Gould,* 1978–81 Bankr.L.Rep. ¶ 67,448 (Bkrtcy.S.D.Fla.1980) (digest of opinion); and (3) that it continued collection efforts while unaware of the petition, *In re Roberts,* 20 B.R. 86, 87 (Bkrtcy.S.D.Ala.1982), *In re Thompson,* 6 C.B.C.2d 651, 19 B.R. 858, 859 (Bkrtcy.S.D.Ala.1982). I find each of these alleged sources of harm either remediable, or too speculative to prohibit the reopening.[14]

(1) Because this was a no-asset case in which creditors received no distribution, the creditor was not harmed by being excluded from the distribution. *In re Stark, supra; In re Callaham, supra.*

(2) The creditor's objection to being excluded from administration of the estate must be taken seriously; a debtor may not completely oust a creditor from this right simply by negligently omitting a debt. The order reopening the estate therefore allowed creditors to examine the debtor upon application to this court and provided 30 days within which to file a complaint objecting to discharge of the debtor or to declare a debt nondischargeable. That period will be extended. *See In re Cafferky, supra,* 3 B.C.D. at 765. As for deficiencies which are not as easily remedied, such as the delay in examining the debtor, as Judge Sullivan stated in *In re Callaham, supra,* "it is insufficient to show a speculative procedural harm to the creditor." 3 B.C.D. at 502; *see also In re Souras, supra* n. 8, 19 B.R. at 801. I will not presume that the chosen trustee was less than competent. Nor will I presume that the creditor will now be significantly less able to discover

assets that the debtors may have hidden from the trustee, as the creditor suggests. Suppl. Brief of Creditor at 7. Indeed, it is equally likely that the delay might aid discovery of once-hidden assets, after the closing of the estate lulled the debtors into complacency. I in no way suggest that the debtors actually failed to disclose assets, but merely respond to the understandable objections of the creditor.

■ (3) The debtors must pay the reasonable attorney's fees expended by the creditors in attempting to collect this debt from the time the creditors should have received notice of the petition, December 18, 1980, until the time they actually received such notice, February 7, 1983. *In re Callaham, supra,* 3 B.C.D. at 502–03; *In re Fortin, supra,* 3 B.C.D. at 73. It is only reasonable in this case that the creditor should not bear the burden of the debtor's error. The creditor is not entitled to indemnity for collection efforts expended after receiving notice, however; the creditor was aware after that time that its debt might be discharged, and both parties advanced their positions for and against reopening in good faith. The creditor's attorneys may file an application for fees in conformity with D.N.J.Bankr.R. 9, setting forth all work performed, all payment actually received and from what sources. It should be noted that the creditor's attorneys have, as a result of collection efforts, already received the sum of $4,944.47. This does not necessarily preclude additional fees.

*Conclusion*

■ The order reopening the case and allowing amendment of schedules will not be vacated. Attorney's fees proven by the creditor and allowed by the court will be awarded. The creditor may move for examination of the debtors under Bankr.R. 2004 and may file a complaint objecting to discharge or to have the obligation declared

---

14. The court in *In re Callaham, supra,* placed the burden of showing actual harm or intentional omission on the creditor, although the debtor might more easily bear the burden of proving that the omission was inadvertent. I do not address this question, as the result would be the same regardless of who bore the burden.

nondischargeable within the extended period as set forth above.

The debtors shall submit an order consistent with this opinion.