**In re Robert E. GRAY, Debtor.**

**Bankruptcy No. 8300167.**

United States Bankruptcy Court,
D. Rhode Island.

Feb. 7, 1986.

David Hassenfeld, Providence, R.I., for Robert E. Gray.

Benjamin M. Scungio, Providence, R.I., for John DiStefano.

Michael J. McEntee, McCaffrey, McEntee & Morriss, Warwick, R.I., for Thomas Scotti.

## DECISION DENYING MOTION TO RE-OPEN AND DECLARING DEBTS NONDISCHARGEABLE

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

On July 15, 1985, Robert E. Gray filed a motion to reopen his bankruptcy case for

the purpose of amending Schedule A–3 [1] to include two unsecured creditors, John DiStefano and Thomas Scotti. DiStefano and Scotti object to the reopening, and to being added as creditors. After hearing on December 12, 1985, the matter was taken under advisement. For the reasons which follow, the motion to reopen is denied. We also find that neither creditor had timely notice or actual knowledge of the filing of Gray's bankruptcy case, and hold that the debts to DiStefano and Scotti are nondischargeable, pursuant to 11 U.S.C. § 523(a)(3)(A).

## FACTS AND PROCEDURAL HISTORY [2]

Prior to 1981, Gray, a self-employed builder on speculation, had purchased land from DiStefano on approximately seven occasions, and DiStefano would frequently show Gray potential construction sites. In May, 1981, Gray purchased two lots in Warwick, Rhode Island, 344 Longmeadow Avenue and 292 Park Avenue, owned respectively by DiStefano, and Scotti, with whom Gray had had little prior contact. As he had done in previous business with DiStefano, Gray used DiStefano's bank, Rhode Island Central Credit Union (RICCU), because DiStefano's record and reputation with that bank were helpful in obtaining financing.

In May or June, 1981, the parties met at the offices of RICCU. Scotti and DiStefano testified that the bank officer made it clear to Gray at this meeting that financing for the purchase of the Warwick properties would be approved only if DiStefano and Scotti guaranteed the loan. Gray conceded on cross-examination that he "could not deny" that he had been told by a bank official, prior to closing, that guarantees were required.

The guaranty was in fact executed by DiStefano and Scotti on June 15, 1981 (Creditors' Exhibit 2) and RICCU loaned Gray $36,000 on June 22, 1981 (Creditors' Exhibit 1). Gray was engaged in construction at the subject properties from June to September of 1981, and during that period he continued to meet with DiStefano on a regular basis, and also with Scotti, although less frequently. The testimony of all parties confirms that Gray was always looking for land to build on, and that when he met with DiStefano and Scotti it was usually to discuss possible future deals.

With both projects near completion in September of 1981, the houses were placed for sale, but due to high interest rates and a sluggish real estate market, Gray was unable to sell either property. Gray began missing mortgage payments to RICCU, and in early 1982 he received a notice of foreclosure.

Gray testified that he could not remember meeting with DiStefano and Scotti to discuss his default and the impending foreclosure, and stated that he never informed DiStefano and Scotti that he was considering bankruptcy. Although the testimony of Scotti and DiStefano was somewhat inconsistent concerning meetings with Gray during the period between completion of building and foreclosure, we reject Gray's assertion that the parties did not meet to discuss his default on the obligation to RICCU. Gray's claimed "lack of recollection" of crucial facts potentially damaging to his position appeared to be intentional, and not the result of genuine inability to remember. On the whole, we view Gray's

---

1. Debtor, Robert E. Gray, moves to amend Schedule A–3 of his Petition in Bankruptcy by adding the following unsecured creditors to said Schedule:

| | | | |
|---|---|---|---|
| John DiStefano 1261 Phoenix Ave Cranston, RI 02910 | Guaranty by creditor of a mortgage foreclosed and deficiency thereon, and lumber bought | not disputed | $18,000.00 |
| Thomas Scotti c/o Scotti Motors 1657 Main Street West Warwick, RI 02893 | Same guaranty as above described for John DiStefano | not disputed | 6,000.00 |

Gray's Motion to Amend, July 15, 1985.

2. This decision constitutes our findings of fact and conclusions of law. *See* Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.

testimony as inaccurate and unreliable, while DiStefano and Scotti were straight-forward, and their testimony is accorded substantial weight.

Based on the credible evidence we conclude that the parties met sometime just prior to the foreclosure in May 1982, and at that time Gray informed DiStefano and Scotti that he was unable to make mortgage payments, that RICCU was about to foreclose, and that he was considering filing bankruptcy. In reliance on Gray's representation that he would "protect their interests," DiStefano and Scotti decided to purchase the subject properties at foreclosure in an attempt to limit losses. We also find that the parties reached an understanding that since they all intended to do further business together, anything Gray owed to DiStefano and Scotti on account of their guaranty to RICCU would be "taken care of in future dealings." As for DiStefano's statement that he would "contest the bankruptcy" in the event he was scheduled as a creditor (*see* Gray's Post-Trial Memorandum at 1), after reviewing all the evidence, we conclude that it was not that statement, but rather, Gray's desire to continue to do business with Scotti and DiStefano in the future which motivated him to omit these creditors from Schedule A–3. *See infra* p. 930.

DiStefano and Scotti did, in fact, purchase the properties at foreclosure on May 4, 1982. Creditors' Exhibits 3, 4. DiStefano later sold the Longmeadow Avenue property at a loss of over $5,000, and Scotti eventually lost the Park Avenue property through foreclosure. At or about the time of foreclosure in May 1982, DiStefano and Scotti, as guarantors of Gray's obligation, paid RICCU the deficiency balance due on the note. Despite these events, the parties continued to meet occasionally until November 1982.

In early 1983, a state court judge before whom Gray appeared in connection with one of many law suits filed against him, suggested that Gray file for bankruptcy. Gray promptly followed that advice, and filed a Chapter 7 petition on March 7, 1983.

He was granted a discharge on May 26, 1983 and the file was closed as a no-asset case on June 7, 1983.

One of eight unsecured claims listed in Gray's petition was the deficiency balance due RICCU, in the amount of $10,272. It is undisputed that creditors DiStefano and Scotti were not listed on Schedule A–3 or anywhere else in Gray's petition. *See* Debtor's Exhibit A. The instant motion to reopen was precipitated by DiStefano filing a collection action against Gray in state court in June of 1985.

## ISSUES

The issues are 1) whether to reopen Gray's bankruptcy case and allow him to schedule creditors DiStefano and Scotti; and 2) whether DiStefano and Scotti had notice or actual knowledge of Gray's bankruptcy case which would entitle Gray to a discharge of the debts in question, pursuant to 11 U.S.C. § 523(a)(3)(A) (quoted below).

## DISCUSSION

*Reopening*

■ 11 U.S.C. § 350(b) provides that [a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

The decision whether to reopen a bankruptcy case to allow amendment of schedules is within the sound discretion of the bankruptcy court. *See Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539 (6th Cir.1985); *In re Lorenzen*, 21 B.R. 129 (Bankr.N.D.Ohio 1982); *In re McNeil*, 13 B.R. 743 (Bankr.S. D.N.Y.1981); *In re Holloway*, 10 B.R. 744 (Bankr.D.R.I.1981); *In re Kenner*, 12 B.R. 460 (Bankr.D.R.I.1981). *See also* Bankruptcy Rule 5010; former Bankruptcy Rule 515.

While there is authority for the position that a no-asset bankruptcy case may not be reopened in order to list inadvertently omitted creditors, *see, e.g., Milando v. Perrone*, 157 F.2d 1002 (2d Cir.1946); *In re Swain*, 21 B.R. 594 (Bankr.D.Conn.1982), more re-

cently, courts have allowed reopening where the creditor has not been prejudiced, and where there is no evidence of debtor's fraud, intentional design, or reckless disregard for the accuracy of the schedules. *See, e.g., In re Rosinski, supra; Stark v. St. Mary's Hospital (In re Stark),* 717 F.2d 322, 9 C.B.C.2d 319 (7th Cir.1983); *Powers v. Crum (In re Crum),* 48 B.R. 486 (Bankr. N.D.Ill.1985); *In re Zablocki,* 36 B.R. 779 (Bankr.D.Conn.1984); *LaBate & Conti, Inc. v. Davidson (In re Davidson),* 36 B.R. 539 (Bankr.D.N.J.1983). Other courts require a showing of "exceptional circumstances" prior to allowing reopening, and focus on such factors as 1) the justification for the failure to list the creditor in question; 2) the degree of disruption which would result from allowing the amendment; and 3) whether the creditor would be prejudiced. *See, e.g., In re Mitchell,* 47 B.R. 209 (Bankr.N.D.Tex.1985); *In re Lorenzen, supra; In re Holloway, supra.*

 Courts are unanimous in holding that a motion to reopen will be defeated where the failure to include the creditor on the original schedule was part of a scheme of fraud or intentional design. *See, e.g., In re Rosinski, supra,* 759 F.2d at 541; *In re Stark, supra,* 717 F.2d 322, 9 C.B.C.2d at 321; *In re Holloway, supra,* 10 B.R. at 745. Although amendments to schedules are generally to be liberally granted, the proponent must advance some justification for the reopening, and show that he/she did not intentionally or recklessly avoid listing the debts in question. *See In re Davidson, supra,* 36 B.R. at 544; *In re Rosinski, supra,* 759 F.2d at 542.

 Based on the credible evidence before us, we find that at the time Gray filed his petition his state of mind was that if he scheduled creditors DiStefano and Scotti, he would lose them as a future source of acquiring land, and since he was desirous of continuing to do business with them, he intentionally and knowingly left them out of his schedules. The evidence is contrary to Gray's assertion that at the time he filed his petition he was unaware of the guaranty signed by DiStefano and Scotti. We

place particular importance on the fact that he had been informed by a bank officer of the necessity of a guaranty, and that he was present when the guaranty was executed.

Even if RICCU had not required guarantees prior to extending financing to Gray in previous transactions, considering Gray's testimony that he had purchased approximately twenty-five lots on speculation between 1978 and 1980, we are unable to accept his initial contention that he was unfamiliar with the term "guaranty." While he may not have been sophisticated in all aspects of financing, Gray had engaged in enough prior real estate transactions so that he knew or should have known what a guaranty was, and on cross examination when asked for his understanding of what a guaranty was, he adequately defined the term. In any event, by the evidence and Gray's demeanor, we are satisfied that at the time Gray scheduled the underlying claim to RICCU in the amount of $10,272, he was aware of his obligations to DiStefano and Scotti, and knew that they had made good on the guaranty. He intentionally did not list his debts to those individuals, with the expectation that by such omission he would retain potential sources of land acquisition.

 Even if Gray had been able to establish that the omission in question was unintentional, we would still deny his motion to reopen, since the evidence shows a failure to take the care required in filling out schedules. *See In re McNeil, supra,* 13 B.R. at 747; *Home Indemnity Company v. Sims (In re Sims),* 31 B.R. 473 (Bankr. W.D.Ky.1983). Case law is clear and consistent; the debtor is held to a standard of reasonable diligence in ascertaining and listing all creditors. *In re Galvin,* 50 B.R. 583, 586 (Bankr.D.R.I.1985); *Brown v. General Motors Acceptance Corp. (In re Brown),* 27 B.R. 151 (Bankr.N.D.Ohio 1982). *See also In re Lorenzen, supra,* 21 B.R. at 131. Even if we found that at the time he filed his petition, Gray was unaware that a guaranty had been executed (a finding which the evidence does not sup-

port and which we decline to make), he certainly should have been on notice of the likelihood that DiStefano and Scotti had guaranteed the loan, and by failing to inquire further, he breached the duty of care required in ascertaining and listing all creditors.

In *Onlon Andrews, Inc. v. Gilbert (In re Gilbert)*, 38 B.R. 948 (Bankr.N.D.Ohio 1984), the debtor argued that he was entitled to discharge of an unscheduled debt because at the time he completed the schedules, he believed that the unlisted debt was a corporate obligation, and not one that should have been included on his personal petition. In ruling against the debtor, the court pointed out that a mistaken belief did not relieve the debtor of his duty to file accurate schedules. *Id.* at 951. Similarly, we hold that by omitting DiStefano and Scotti from Schedule A–3, Gray breached his duty to ascertain and list all creditors.

Another factor which we have considered is the degree of prejudice which will result if reopening is allowed. Although some courts have held that the failure to list a creditor in a no-asset case does not prejudicially affect the rights of an omitted creditor who will not be denied the right to participate in a dividend, this is not always the case. *See In re Gilbert, supra,* at 951; *In re Crum, supra,* 48 B.R. at 490; *Surety Company of the Pacific v. Rayson (In re Rayson)*, 39 B.R. 597 (Bankr.C.D.Cal.1984). Here, for example, DiStefano has expended time and has incurred legal expenses in connection with his state court collection action against Gray. Further, since Scotti and DiStefano sustained substantial losses in connection with the repurchase of the properties in question, both would certainly be prejudiced if reopening were allowed at this point. *See In re Gilbert, supra,* 38 B.R. at 951; *In re Thompson,* 19 B.R. 858, 6 C.B.C.2d 651, 652 (S.D.Ala.1982); *cf. In re Mitchell, supra,* 47 B.R. at 212, 213.

Primarily because Gray's omission of creditors DiStefano and Scotti was intentional, and not inadvertent, but also for the alternative reasons discussed above, Gray's motion to reopen is denied.

*11 U.S.C. § 523(a)(3)(A)*

Gray also maintains, however, that DiStefano and Scotti had actual knowledge of his bankruptcy case and that his debts to those creditors should be discharged pursuant to 11 U.S.C. § 523(a), which provides that

[a] discharge under section 727 ... does not discharge an individual debtor from any debt ...

. . . .

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) ... timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing. . . .

We have heard extensive testimony as to whether the omitted creditors had notice or actual knowledge of Gray's bankruptcy, and do not feel jurisdictionally deprived of the power to rule on the Section 523(a)(3) discharge issue, notwithstanding that this case has not been reopened or removed to this Court from the state court where DiStefano's collection action is pending. *See* 3 *Collier on Bankruptcy* ¶ 523.13[9], at 523–102 (15th ed. 1985) (debts that fall within section 523(a)(3) are the type over which the bankruptcy court has concurrent jurisdiction). *Contra In re Iannacone,* 21 B.R. 153, 155 (Bankr.D.Mass.1982); *In re Thompson, supra,* 19 B.R. at 653; *In re McNeil, supra,* 47 B.R. at 747.

The failure to schedule a creditor will ordinarily result in that debt being excepted from discharge, in the absence of notice or actual knowledge of the filing on the part of the omitted creditor in time for timely filing of a proof of claim. *See In re Sims, supra,* 31 B.R. at 473; *In re Iannacone, supra,* 21 B.R. at 154, 155. Once a debtor receives a discharge, it is up to the creditor to show that he has not been duly scheduled, and the burden then shifts to the debtor to come forward with evidence

**932**

that the creditor had notice or actual knowledge of the bankruptcy proceedings. *See In re Lorenzen, supra,* 21 B.R. at 130, 131; *In re Brown, supra,* 27 B.R. at 153. Since it is admitted that DiStefano and Scotti were not scheduled and that they did not receive formal notice of the bankruptcy, it is up to Gray to show that they had constructive notice or actual knowledge. *See, e.g., Stratton v. Hagan (In re Stratton),* 29 B.R. 93 (Bankr.W.D.Ky.1983).

■ While Gray would impute actual knowledge or constructive notice to DiStefano and Scotti because neither creditor made any attempt at collection until DiStefano brought suit in state court in June of 1985, we do not equate their forbearance with knowledge of the bankruptcy proceedings. Instead, we accept the testimony of DiStefano and Scotti that they did not attempt collection earlier because they knew Gray had been hit hard by the recession and high interest rates, and they wanted to give him a chance to get back on his feet financially.

Notwithstanding Gray's assertion to the contrary, we have previously concluded that sometime around May 1982, he met with DiStefano and Scotti and informed them of his financial difficulties, and that he was considering bankruptcy. However, the degree of knowledge required to satisfy the 11 U.S.C. § 523(3)(A) exception consists of more than being privy to statements that a debtor is contemplating seeking bankruptcy relief sometime in the future. It must include knowledge of facts sufficient to apprise the creditor that a case was actually filed, and where that proceeding is pending. "Actual knowledge as contemplated by 11 U.S.C. § 523(a)(3)(A) is information generally equivalent to legal notice." *In re Stratton, supra,* at 95. We accept Scotti's testimony that he did not have notice or actual knowledge of Gray's bankruptcy until he received a copy of the instant motion to reopen. Likewise, we find DiStefano's contention that he did not have knowledge of Gray's bankruptcy until the summer of 1985 to be supported by the record.

Accordingly, the motion to reopen is denied. Also the debts now sought to be included within this bankruptcy have not been affected by the discharge.

Enter judgment accordingly.