**In re Robert E. GRAY.**

Civ. A. No. 86–10178 S.
Bankruptcy No. 83–00167.

United States District Court,
D. Rhode Island.

May 14, 1986.

McCaffrey, McEntee, & Morriss, Michael J. McEntee, Warwick, R.I., for creditor Scotti.

Benjamin M. Scungio, Providence, R.I., for creditor Distefano.

*Memorandum and Order*

SELYA, District Judge.

This is an appeal from a bankruptcy court decision in which the court below denied the debtor's motion to reopen the bankruptcy and declared certain debts owed by the debtor, Robert E. Gray, to John DiStefano and Thomas Scotti, respectively, nondischargeable. *In re Robert E. Gray*, 57 B.R. 927, Bk. (Bankr.D.R.I.1986) (*Gray I*). The debtor contends that, even though the bankruptcy court had authority to act upon (and to deny) the application to reopen,[1] it was without jurisdiction to de-

---

1. Initially, the debtor urged in this court that "The Bankruptcy Judge [was] clearly wrong in sustaining the objections of Thomas Scotti and John DiStefano to the Motion to Reopen." Appellant's Statement of Issues (filed Feb. 19, 1986). Over time, Gray and his counsel apparently have had second thoughts. The debtor now concedes that the bankruptcy judge had discretion to deny the motion to reopen. *See* Appellant's Brief on Appeal at 1–2 (filed April 15, 1986). This reason of appeal is, therefore, deemed to be waived. *See A & H Mfg. Co., Inc. v. Contempo Card Co., Inc.*, 576 F.Supp. 894, 896 n. 1 (D.R.I.1983). In any event, the appellant

clare the debts nondischargeable. There was no motion or petition for a determination of dischargeability pending before the bankruptcy court, Gray argues, so he was "deprived ... of the opportunity to be heard and of having his day in Court," Appellant's Brief on Appeal at 2, when the bankruptcy judge proceeded to decide the questions of notice and dischargeability.

It cannot be gainsaid that the bankruptcy court had ample basis for not reopening the debtor's bankruptcy case. Yet, although the point is now conceded on this appeal, *see ante* n. 1, it is necessary to track the etiology of the declination to reopen in order to place the remaining issue in proper perspective.

■ Section 350(b) of the Bankruptcy Code, 11 U.S.C. § 350(b), provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." It is settled beyond cavil that reopening rests within the sound discretion of the bankruptcy court and depends upon the facts of each case. *Rosinski v. Boyd,* 759 F.2d 539, 540–41 (6th Cir.1985); *Reid v. Richardson,* 304 F.2d 351, 355 (4th Cir. 1962); *In re McNeil,* 13 B.R. 743, 745 (Bankr.S.D.N.Y.1981); *In re Kenner,* 12 B.R. 460, 461 (Bankr.D.R.I.1981); *In re Holloway,* 10 B.R. 744, 745 (Bankr.D.R.I. 1981).

In exercising this discretion anent "omitted creditor" cases (like the one at bar), bankruptcy courts have looked in particular to whether the debtor's failure to include the omitted creditor on the original schedule was part of a scheme of fraud or intentional design, *see, e.g., Rosinski,* 759 F.2d at 541; *Stark v. St. Mary's Hospital,* 717 F.2d 322, 9 C.B.C.2d 319, 321 (7th Cir.1983); *Holloway,* 10 B.R. at 745, and/or whether the creditor will be unfairly prejudiced if reopening is permitted, *see, e.g., Onlon Andrews, Inc. v. Gilbert,* 38 B.R. 948, 951

(Bankr.N.D.Ohio 1984); *In re Thompson,* 19 B.R. 858, 6 C.B.C.2d 651, 652 (S.D.Ala. 1982). Reopening is a congiary to be bestowed upon the deserving, not a matter of right.

■ In examining Gray's petition to reopen, the bankruptcy court properly considered the debtor's state of mind when he prepared the original schedule. The court's conclusion that Gray "intentionally did not list his debts to [DiStefano and Scotti], with the expectation that by such omission he would retain potential sources of land acquisition," *Gray I,* 57 B.R. at 930–31, has become the law of the case. *See ante* n. 1. The conclusion that Gray "fail[ed] to take the care required in filling out schedules," *id.* at 931, must likewise be accepted.

■ It was also proper, *on this issue,* for the bankruptcy court to consider the degree to which DiStefano and Scotti would be prejudiced by reopening. In this regard, the court rightfully scrutinized a number of relevant factors: the losses which the creditors sustained in connection with the repurchase of the properties in question, *id.* at 931, the legal expenses DiStefano had incurred in his state court collection action against Gray, *id.,* and the creditors' lack of actual or constructive notice of Gray's bankruptcy proceedings, *id.* at 931–932. Consideration of each of these points was well within the bankruptcy court's discretion in its effort to assay "cause" adequate to bottom reopening in accordance with 11 U.S.C. § 350(b). Indeed, had the bankruptcy judge failed to consider the extent of the knowledge possessed by the omitted creditors, his decision to deny redress to the debtor might well be vulnerable on that ground. *Cf. Thompson,* 19 B.R. 858, 6 C.B.C.2d at 652 (discussing creditor's lack of notice of the prior bankruptcy case); *McNeil,* 13 B.R. at 745 (same).[2] To this extent, then, the bank-

has elected to proceed in this court without any transcript of the evidence adduced below, thereby undercutting any possible argument as to the weight of the evidence or as to abuse of discre-

tion vis-a-vis the bankruptcy judge's refusal to reopen.

2. As noted before, the bankruptcy court, in determining the merits of a motion to reopen,

ruptcy judge acted properly in examining into the notice issue and in making findings on it. That issue, it would appear, was solidly before the bankruptcy tribunal.

That the bankruptcy court was entitled to inquire into, and to make findings anent, the extent of the omitted creditors' knowledge is not, however, tantamount to saying that the court could directly determine dischargeability of the debts. The parties agree—as indeed they must—that the obligations in question fall within the encincture of 11 U.S.C. § 523(a)(3). In respect to debts of that genre, bankruptcy courts do not possess exclusive jurisdiction. Rather, their jurisdiction is concurrent with the state courts. 11 U.S.C. § 523(c). *See* 3 *Collier on Bankruptcy* ¶ 523.13[9] at 523–102 (15th ed. 1985); *McNeil*, 13 B.R. at 747. As Collier has noted:

> Should a creditor bring a suit in a court other than the bankruptcy court on a debt which he contends is excepted from discharge under section 523(a)(3), the local court would determine the question of dischargeability.

*Collier, supra,* at 523–103.

It has been widely held that, in the absence of either (i) a decision by the bankruptcy court to reopen the bankruptcy, or (ii) removal of the collection action from the state courts (a circumstance which has not occurred here), the determination of dischargeability under § 523(a)(3) is not before the bankruptcy judge. *See Thompson*, 6 C.B.C.2d at 653; *In re Iannacone*, 21 B.R. 153, 155 (Bankr.D.Mass.1982); *McNeil*, 13 B.R. at 747–48. But, as Judge Votolato has indicated, *Gray I*, 57 B.R. at 931, such a sweeping ipse dixit has rather shaky underpinnings. .

A more enlightened view is that a bankruptcy tribunal may permit reopening pursuant to 11 U.S.C. § 350 for the avowed and express purpose of determining dis-

chargeability. *In re Rediker*, 25 B.R. 71, 73–74 (Bankr.M.D.Tenn.1982). But, the *Rediker* rule, even if accepted, is not dispositive of the question presented here. After all, *Rediker* contemplates that, to invoke this anodyne, there must be adequate notice to place dischargeability itself in issue. *Id.* (suggesting that application to reopen pray specifically for a determination of dischargeability).

▮ Thus, although *Rediker* appears to be good law, it is of marginal assistance at the moment. In this case, the bankruptcy court did not reopen the proceedings for the purpose of determining dischargeability or for any other purpose; instead, it refused to reopen. *Gray I*, 57 B.R. at 932. And, dischargeability per se was never placed directly in issue. *Cf. Rediker, supra.* To the contrary, Gray's application prayed only to reopen and to amend the schedule of creditors; it did not, on its face, seek a resolution of the question of dischargeability. Nor did Gray file any sort of ancillary petition to resolve that matter. The creditors, on the other hand, objected to reopening, but did not essay any further steps (say, a cross motion or an adversary complaint) to bring dischargeability clearly into focus. The sockdolager, of course, is simply this: pursuant to the bankruptcy court's pretrial order, the parties filed a joint statement (Statement) signed by all counsel on October 28, 1985, in advance of the bankruptcy court hearing; the Statement, *id.* at Part III, purported to limn a consensus view of the issues before the court; and in so doing, the Statement omitted even the slightest reference to the question of dischargeability. For these reasons, even in the more expansive precincts envisioned by *Rediker*, the bankruptcy court was without authority on this record to decide that the debts were nondischargeable.[3] That issue remains for the

must factor into the mix the degree of prejudice to the omitted creditor. *E.g., Thompson,* 19 B.R. 858, 6 C.B.C.2d at 652–53. If DiStefano and/or Scotti had actual (or even constructive) notice of the bankruptcy case and of Gray's failure to list either or both of them on the schedule, yet elected to lurk in silence while the

bankruptcy sauntered along, those facts would likely be of critical importance in the calculus of prejudice vel non.

3. To be sure, the case at bar differs both from the usual case and from *Rediker.* Typically, the debtor seeks to have the bankruptcy court pass

state court to assess in the pending collection action.

Be that as it may, the fact that the bankruptcy judge's purported *decision* of the question of dischargeability was ultracrepedarian (and of no dispositive effect) does not signify that his *findings* that neither omitted creditor possessed actual or constructive notice of Gray's bankruptcy case at the relevant times, *Gray I,* 57 B.R. at 931–932, must be disregarded. These facts were plainly pertinent and material to the judge's consideration of the prejudice prong on the petition to reopen—and it is for the local court (in which the collection proceeding is pending) to determine the effect of the resultant finding. Though the holding as to nondischargeability may be infirm, the underlying factual findings upon which that holding was bottomed were well within the bankruptcy court's purview. *See ante.*

■ The principles of collateral estoppel can operate to preclude relitigation of facts formerly in dispute, even short of issue preclusion. *See, e.g., Northern Oil Co. v. Socony Mobil Oil Co.,* 347 F.2d 81, 82 (2nd Cir.1965) (facts found by state court, which were necessary to its decree in prior action, are binding in subsequent action on grounds of collateral estoppel). *Cf. Perkins v. Kirby,* 39 R.I. 343, 363, 97 A. 884 (1916) (verdict and judgment are conclusive by way of estoppel only as to those facts necessarily involved, without existence, proof, or admission of which such verdict could not have been rendered). The state tribunal may well choose to give pre-clusive effect to the bankruptcy court's findings regarding the creditors' knowledge or notice. Because questions of collateral estoppel and res judicata are generally governed by state law, *see, e.g., Konigsberg v. State Bar of California,* 366 U.S. 36, 44, 81 S.Ct. 997, 1003, 6 L.Ed.2d 105 (1961); *Gonsalves v. Alpine Country Club,* 563 F.Supp. 1283, 1287 (D.R.I.1983), *aff'd,* 727 F.2d 27 (1st Cir.1984), it will be for the state court to pass upon the preclusive effect (if any) of the bankruptcy court's factual findings on the affirmative defense which Gray has asserted in the collection pavane.[4]

Thus, though noting that the bankruptcy judge's purported declaration of the nondischargeability of these debts was surplusage and has no force as a conclusion of law (that is, the state court is in this instance the proper tribunal to adjudicate the legal sufficiency of the debtor's affirmative defense), this court will neither strike nor vacate the bankruptcy judge's findings of fact regarding the absence of relevant knowledge on the part of Messrs. DiStefano and Scotti. Those findings cannot, based on the skimpy record which the debtor has furnished on appeal, *see ante* n. 1, be termed "clearly erroneous." (From aught that appears, they are clearly correct.) The use to which those findings may be put is, of course, for the state court to decide. *See ante* n. 4.

The order of the court below refusing to reopen the bankruptcy proceedings must be sustained, and the debtor's appeal must be dismissed. The judgment below is

---

on dischargeability, and the creditor prefers a nonbankruptcy forum. *E.g., McNeil, supra.* Here, the roles are reversed; the creditors seek on appeal to vindicate the bankruptcy court's right to decide dischargeability (although they failed to request this relief below) and the debtor protests. Although it is perfectly understandable why, so long as the creditors had acquiesced, the bankruptcy judge felt free to make the adjudication, there is a lack of symmetry in that approach. The bankruptcy case was closed. Having declined to reopen it, there was, in a very real sense, no proceeding pending before the bankruptcy judge which could conceptually serve as a vehicle for rendition of a holding on the dischargeability issue (at least in

the absence of some pleading which placed that question squarely before the court).

4. Rhode Island has "adopted a conventional approach" to the application of doctrines of res judicata and collateral estoppel. *Gonsalves,* 563 F.Supp. at 1287. If, despite the absence of a formal cross petition, the parties had both the opportunity and the incentive to be heard, and the means and the chance effectively to adduce proof on the question, preclusion as to the facts anent notice and knowledge could well lie. *See Gonsalves, supra.* The state court can (and should) decide if these stipulations have been fulfilled here.

therefore affirmed. The case is remanded to the bankruptcy court for the entry of an appropriate (modified) decree consonant herewith.