**In re Emmanuel Stanley SCISM, Debtor.**

**Bankruptcy No. 83–02646–B.**

United States Bankruptcy Court, W.D. Oklahoma.

Aug. 15, 1984.

Patrick Brown, Oklahoma City, Okl. (Pete Gelvin, Oklahoma City, Okl., with him on brief), for Emmanuel Stanley Scism.

Bruce McClelland, of McClelland, Collins, Bailey, Bailey & Manchester, Oklahoma City, Okl., for Commercial Credit Equipment Corp.

## MEMORANDUM DECISION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

The sole question present before the Court is whether the debtor, Emmanuel Stanley Scism (hereinafter "Scism"), should be allowed to reopen his bankruptcy estate for the purpose of listing an additional creditor, Commercial Credit Equipment Corp. (hereinafter "CCEC"), pursuant to 11 U.S.C. § 350(b) and Rule 5010 Fed.R. Bankr.P., *infra.*

Scism's voluntary petition in bankruptcy was filed on October 3, 1983, containing schedules which set forth a list of 5 secured creditors and 62 unsecured creditors. Pursuant to Fed.R.Bankr.P. 2002(e) [1], the Court did not set a claims bar date and a no-asset notice was sent to scheduled creditors which fixed January 2, 1984, as the last day to file objections to discharge pursuant to 11 U.S.C. § 727, and complaints to determine dischargeability of any debt pursuant to 11 U.S.C. § 523(c). Scism was granted a discharge in bankruptcy on January 16, 1984.

On March 13, 1984, CCEC commenced suit in state court against Scism for a deficiency owing under a purchase contract for a tractor/trencher which had been repossessed and sold leaving a deficiency of approximately $8,000.00.

CCEC was not scheduled as a creditor nor listed in any other fashion in the bankruptcy proceedings.

On May 17, 1984, Scism filed an application to reopen his bankruptcy estate for

---

**1.** Rule 2002(e) provides:

In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

inclusion of CCEC as a creditor.[2] This matter was set for hearing, evidence was submitted and the Court requested briefs.

While not specifically stated in his application to reopen the bankruptcy estate, it is readily apparent that Scism's desire to reopen is in order that the deficiency may be discharged. If CCEC had actual knowledge of the petition in bankruptcy prior to the closing of the estate, the debt would be discharged without reopening the estate, 11 U.S.C. § 523(a)(3)(A)[3], but Scism has adduced no evidence of such actual knowledge. In order to discharge the deficiency therefore, Scism must reopen the estate and amend the schedules to include CCEC as a creditor.

CCEC argues that § 523(a)(3)(A) bars this debt from being discharged, even after amendment of schedules, and the reopening should accordingly be denied as it could serve no purpose.

Section 350(b) of the Bankruptcy Code states that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). This section is supplemented by Rule 5010 which provides "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Fed.R.Bankr.P. 5010. On its face, § 350(b) appears to address the instant case, i.e. where a debtor requests that an estate be reopened to add a creditor and discharge the corresponding debt. Section 523(a)(3)(A) of the Code mitigates against this position, however, by denying a debtor the discharge of debts that were neither listed nor scheduled in time to permit a creditor to file a timely proof of claim unless the creditor had sufficient knowledge of the case to file a timely proof of claim.

The seminal decision in such matters is *Milando v. Perrone*, 157 F.2d 1002 (2d Cir.1946). Under the rule of *Milando*, a debtor's application to reopen a case to amend schedules should be denied after the end of the usual six month period for filing proofs of claim. Bankr.Act § 57(n), 11 U.S.C. § 93.[4] The debtor in *Milando* also had inadvertently omitted a creditor and sought to reopen the estate to amend his schedules and have the debt discharged. The Court denied the application because the lateness of the notice to the creditor would bar the debt from being discharged. As previously noted, § 523(a)(3)(A), like its predecessor at issue in *Milando*, Bankr.Act § 17a(3), 11 U.S.C. § 35(a)(3), bars a debt from being discharged if it was not properly scheduled in time to allow the creditor to file a timely proof of claim. Although the six month period had passed, the district court had allowed reopening and discharge because "the creditor could not be harmed where the estate showed no assets", 157 F.2d at 1004; however, the Second Circuit held that courts may not disregard the "clear language" of the statute, except perhaps to prevent a fraud or injustice. Finding an absence of injustice in forcing the debtor to bear the results of his own error, the Court denied the application to reopen. *Milando* was most recently followed in *In re Laczko* 37 B.R. 676 (Bankr. 9th Cir.1984) (noting, however, that no notice had been sent to creditors that the filing of proofs of claim was not required).

---

**2.** While styled "application", in substance the request was a motion, the requisite notice and opportunity for hearing having been given.

**3.** A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

 . . . .

 neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing.

**4.** Section 57(n) provided that claims which were not filed within six months after the first date set for the first meeting of creditors would not be allowed. The time for filing proofs of claim is now governed by Fed.R.Bankr.P. 3002(c). While the time frame has been altered, the courts' rationale has not.

A more liberal tact has been taken by other circuits. The Third Circuit has stated in dictum that even when the six month rule would, by its terms, apply, courts of bankruptcy are imbued with discretion to discharge a debt in spite of the rule, when no harm results to the creditor. *Fourteenth Ave. Security Loan Ass'n. v. Squire*, 96 F.2d 799 (3d Cir.1938). *Cf. Matter of Gershenbaum*, 598 F.2d 779 (3d Cir. 1979) wherein the Court held that schedules may be amended even after the six month period has run, but declined to decide whether the amendments would result in discharge of the amended debt. The Third Circuit's dictum was followed by the Fifth Circuit in *Robinson v. Mann*, 339 F.2d 547 (5th Cir.1964). In *Robinson* the Court held that bankruptcy courts have the discretion to invoke their equitable powers to allow amendment of schedules after the expiration of the claims period under "exceptional circumstances", and the Court suggested such circumstances exists where (1) the case is a no-asset one; (2) there is no fraud or intentional laches; and (3) the creditor was omitted through mistake or inadvertence. *Compare Milando v. Perrone*, 157 F.2d at 1004: "The fact that the judgment creditor in this case would have received no dividends if he had been able to prove his claim would therefore not be a sufficient reason to disregard the mandate of [§ 17 of the Bankr.Act], *even if the courts had power to disregard it.*" (emphasis supplied).

 While declining the liberality of the Third and Fifth Circuits, we need not adopt the harshness of *Milando*. Nor do we need exercise our equitable powers, for relevant law has changed since *Milando*. In 1973, former Bankr.Rules 203(b)[5] and 302(e) became effective. These rules created a no-asset exception to the six month bar for the filing of claims. In August, 1983, Rule 302 was replaced by Fed.R. Bankr.P. 3002 which provides in pertinent part:

> In a chapter 7 liquidation ..., a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, except as follows:
>
> ....
>
> If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.

Accordingly when, as in the instant case, a no-asset notice has been sent to creditors and no subsequent dividend notice has been sent, a creditor scheduled incident to a reopening has not lost his opportunity to file a proof of claim sufficient for him to share equally in a subsequent distribution with creditors who were initially scheduled. *See Matter of Stark*, 717 F.2d 322, 324 (7th Cir.1983). It follows then that § 523(a)(3)(A) would no longer act as a bar to the dischargeability of the debt at issue.

In *Matter of Swain*, 21 B.R. 594 (Bankr. D.Conn.1982), cited by CCEC, Judge Krechevsky considered whether or not a debtor may reopen a no-asset estate to add a creditor to his schedules in order to procure a discharge. After carefully considering prior case law Judge Krechevsky decided that he was compelled to follow the rule of *Milando*. Nonetheless, in *Matter of Zablocki*, 36 B.R. 779 (Bankr.D.Conn.1984), Judge Krechvesky acknowledged that in *Swain*, no consideration was given to the significance of the Court's not setting a claims bar date. 36 B.R. at 781. Upon re-examination he concluded that the result in *Matter of Stark, supra*, would be a proper result under current law and that *Milando* did not compel a different outcome. *See also In re Meile*, 36 B.R. 719 (Bankr.S.D.Ill.1984).

 Having concluded that this court does indeed have the power to reopen the estate, the question becomes whether it is appropriate in this instance to exercise that power. Scism's goal, to be discharged of

---

**5.** Former Bankr.Rule 203(b) was the predecessor of Fed.R.Bankr.P. 2003(e), *supra*, n. 1.

his debt to CCEC, is a proper purpose for which to reopen the estate because it will accord relief to Scism. However, the decision to reopen a bankruptcy estate is not a compulsory one. Section 350(b) states a case *may* be reopened.

■ Many of the courts that have considered when an estate should be reopened have relied on their equitable powers and have applied the "exceptional circumstances" test announced in *Robinson v. Mann, supra.* See *In re Ratliff,* 27 B.R. 465 (Bankr.E.D.Va.1983); *In re Traub,* 26 B.R. 296 (Bankr.W.D.Ky.1982); *In re Souras,* 19 B.R. 798 (Bankr.E.D.Va.1982); *In re Holloway,* 10 B.R. 744 (Bankr.D.R.I.1981). Rather than follow these cases this Court adopts a test similar to that of *In re Stark, supra:* in a no asset bankruptcy when notice has been given pursuant to Fed.R. Bankr.P. 2002(e), a debtor may reopen the estate to add an omitted creditor when the creditor has not been irrevocably harmed and there is no evidence of fraud, intentional design, or reckless disregard for the accuracy of the schedules. While this may be viewed as "exceptional circumstances" we decline to adopt that language.

Because this was a no asset case, as indicated by the notice sent to all creditors, in which creditors received no distribution, CCEC was not harmed by being excluded from the distribution.

Scism's schedules reflect a commendable effort to list all potential creditors. We can find no evidence of fraud, intentional design or reckless disregard for the accuracy of the schedules, nor has CCEC alleged so.

■ The final matter is the issue of whether or not reasonable attorney's fees expended by CCEC in attempting to collect this debt should be awarded. We believe that Scism must pay such reasonable fees, to be determined by this Court, that were expended by CCEC in attempting to collect this debt from the time CCEC should have received notice of the petition, October 18, 1983 (the notice to creditors of the bankruptcy having been sent on October 14,

1983), until the time they actually received such notice, May 14, 1984. It is only reasonable in this case that the creditor should not bear the burden of the debtor's error. *Matter of Davidson,* 36 B.R. 539 (Bankr.D. N.J.1983).

Based on all of the above, therefore, the application to reopen the above styled bankruptcy estate shall be and hereby is, granted. The attorney for CCEC shall submit to this Court a request for fees, consistent with this memorandum. Judgment will be entered accordingly.

Pursuant to B.R. 7052 this memorandum contains the findings of fact and conclusions of law.