**In re James M. JOHNSON a single person, d/b/a Jim's Union 76, Debtor.**

**Bankruptcy No. 82–01378–142.**

United States Bankruptcy Court, E.D. Washington, at Spokane.

Jan. 7, 1985.

John F. Strohmaier, Odessa, Wash., for debtor.

Gary J. Gainer, Spokane, Wash., for Mrs. Betty McPherson.

## MEMORANDUM DECISION AND ORDER

SIDNEY C. VOLINN, Bankruptcy Judge.

This matter was initiated by the debtor's motion and affidavit to reopen bankruptcy and add omitted creditor. The creditor sought to be added is the debtor's former wife whose name is now Betty M. McPherson. The purpose of the motion is to transform the status of Mrs. McPherson from that of an unscheduled creditor whose claim is not subject to discharge by virtue of 11 U.S.C. § 523(a)(3), to one who is scheduled and therefore subject to discharge.

FACTS

I.

The debtor did business as Jim's Union 76, a service station. His business and personal problems were attended by financial difficulties which caused him to file a Chapter 7 bankruptcy petition on July 27, 1982.

The marriage between the debtor and his former wife, Mrs. McPherson, had been dissolved approximately six months previously, the decree of dissolution having been entered on February 8, 1982. The decree provided for debtor to pay monthly support payments of up to $500 a month for two children aged 9 and 12, and also for division of property and payment by debtor of certain community obligations. The provisions for division of property and debt payment had been agreed to in a property settlement agreement. The husband received as his separate property, the real property consisting of a home in the city of Spokane subject to a mortgage the sum of approximately $33,000. The debtor in his bankruptcy schedules valued the home at $51,000 claiming an exemption in the equity.

The wife received the home property located at Usk in a development known as River Bend Estates in Pend Oreille County, Washington. The husband agreed to pay

certain outstanding community debts and to hold the wife harmless for and be responsible to pay them. These debts included a mortgage on the River Bend property held by Rainier National Bank to secure payment of a debt which at that time was approximately $7,200. The parties seem to agree that the debtor assumed a Washington Trust Bankcard debt of some $600, although the only debt indicated in this respect is to "Washington Trust Bank— $7,840".

Considering the debts and property as evidenced by the bankruptcy schedules, together with the financial difficulties of the husband resulting in the bankruptcy filed six months later, the parties' financial condition was marginal. Inexplicably, the bankruptcy schedules showed debts, probably of community origin, far greater in magnitude than those shown in the property settlement agreement. These debts included some $2,400 to Internal Revenue and approximately $20,000 to unsecured creditors, virtually all of them having been involved with the service station except for the two debts in question which were listed as follows:

Rainier National Bank: 4/15/78

Lien on property awarded to his ex-wife in the divorce decree. Decree ordered debtor to pay the monthly expenses L. 4 3rd Addition, River Bend Estates, Usk. Pend Oreille County, in the amount of $6,832.

Washington Trust Bankcard Department: $653.10

Mastercard, 4/5/75—7/13/82.

Washington Trust Bank: business loan of $7,000 on 10/15/81 may have filed a Spokane County Superior Court action against debtor $5,395.63.

## II.

The debtor in his bankruptcy schedules did not indicate Mrs. McPherson as a creditor. She therefore did not receive notice of and apparently was not aware of the debtor having filed bankruptcy until some time in October 1982. Her knowledge of the bankruptcy came about as a result of her having been contacted by the attorney for the contract vendor of the River Bend real estate, since the debtor had stopped making payments thereon after he filed bankruptcy the preceding July.

It is not clear why the debtor did not list his former wife as a creditor since he knew or should have known that if he did not pay the contract vendor, the wife would be required to make the payments in which event she would inevitably turn to him. Counsel for the debtor, John F. Strohmaier, in his affidavit in support of the motion to reopen states: "That although Rainier National Bank and the Washington Trust Bankcard Department were included in the Debtor's Schedule A-2 and listed in the Matrix, I inadvertently omitted Betty M. (Johnson) McPherson as a contingent creditor;" The affidavit further states that on July 10, 1984 Mrs. McPherson obtained a judgment against the debtor in the Spokane County Superior Court dissolution proceedings, for the amount due on the Rainier National Bank and Washington Trust Bankcard debts which is alleged to be $7,874.36. The judgment was for $4,325.42 which represented the sums actually expended by Mrs. McPherson on the two debts in issue.

## III.

The bankruptcy file shows that an order was entered on August 3, 1982, a copy thereof having been sent to all creditors of the debtor who are listed in the schedules stating *inter alia* "September 30, 1982 is fixed as the last day for the filing of objections to the discharge of the debtor.... September 30, 1982 is fixed as the last day for the filing of a complaint to determine the dischargeability of an (sic) debt pursuant to 11 U.S.C. § 523(c) ..."

This order further advises creditors:

It appears from the schedules of the debtor that there are no assets from which any dividend can be paid to creditors. It is unnecessary for any creditor to file his claim at this time in order to share in any distribution from the estate. If it subsequently appears that there are

assets from which a dividend may be paid, creditors will be so notified and given an opportunity to file their claims.

On May 2, 1983 the trustee, William F. Nielsen, filed a report stating that he made diligent inquiry into the whereabouts of property belonging to the estate; that there were no assets over and above the exemptions claimed by the debtor, and that nothing remained to be done and that the case may be closed. On May 13, 1983 an order approving the trustee's report of no distribution and closing estate was entered.

### IV.

Subsequent to hearing argument on the motion, the court requested of counsel the state court dissolution file. Copies of various pleadings from the dissolution action in the Superior Court of the State of Washington for Spokane County, Cause No. 81301759–1 were furnished. Among these pleadings were those relating to the wife's action on the two debts. While the initiating pleadings are not furnished, it appears from the plaintiff's trial brief that an action had been started in the dissolution proceeding early in 1984 by Mrs. McPherson, despite the debtor's bankruptcy, for enforcement or payment of the two debts in question. The plaintiff's trial brief therein contended that the debt to the wife was not discharged because she was not listed as a creditor, citing 11 U.S.C. § 523(a)(3)(A) which provides that an unlisted creditor is not subject to discharge. The court entered a memorandum of opinion and thereafter findings of fact, conclusions of law and judgment which, essentially, held that the wife was an unlisted creditor who did not have notice or knowledge of the bankruptcy until late October 1982 which "was after the expiration of the deadline date and the petitioner was unable to timely file proof of claim or an adversary proceeding." While the court does not appear to have characterized the debt in its findings and conclusions, it stated in its Memorandum of Opinion:

In effect, had the debt been listed on the Chapter VII (sic) schedule (as counsel for Mr. Johnson contends), the debt would have to be alimony, maintenance, or support to be nondischargeable. The court finds that the debt was not alimony, maintenance or support. In effect, the court finds that had Mrs. McPherson been listed on the Chapter VII petition the debt would have been discharged, however, Mrs. McPherson was not listed on the Chapter VII petition. The issue then revolves from whether this unscheduled debt is discharged by reason of notice or actual knowledge on the part of Mrs. McPherson to protect her rights.

The court concluded by stating "This is a novel issue and the record is short. The court could be in error in its interpretation of the Bankruptcy Code and Mr. Johnson may want to appeal this decision."

Mr. Johnson did appeal the foregoing judgment to the Court of Appeals on August 9, 1984.

### DISCUSSION

### I.

The state court, as indicated, turned its decision on 11 U.S.C. § 523(a)(3), the unlisted creditor discharge exception. The court ruled that because the notice from the bankruptcy court set September 30, 1982 as the cutoff date for filing of claims or dischargeability actions, any party not having such notice, was in effect, conclusively presumed to have been prejudiced by virtue of the lack of such notice.

However, such a presumption should be examined in the light of the record in this case which shows the following:

1. The notice, as indicated, advises creditors that because it appeared there were no assets, creditors need not file claims until so notified. Therefore, had plaintiff received the notice, she would have been advised not to file a claim unless called upon to do so. The record further shows that she would not have been called upon to file a claim since the case was closed with a no asset report.

2. The only ground indicated as a basis for a dischargeability complaint would have been the alimony or support exception, § 523(a)(5). In this respect, the court found that the debt originated in a property settlement agreement and was not for alimony or maintenance. Under this ruling, the plaintiff would suffer no prejudice by virtue of the lack of notice as to when a dischargeability action should be filed.

## II.

It is in the context of the foregoing factors that one must consider the debtor's motion and affidavit to reopen bankruptcy and add an omitted creditor. It was not possible for the debtor to request of the dissolution court the relief which is sought here since it could not have been granted there. It may also be noted that observations of that court beyond its conclusion that the debt was not scheduled and therefore not dischargeable under § 523(a)(3) were, essentially, commentary or *dicta*.

The issue presented, appropriately, to this court, is whether the amendment should be granted. *3 Collier on Bankruptcy*, § 521.07 (15th ed.) relating to amendment of schedules states "A discharge alone, however, may not be a bar to the allowance of an amendment, where there has been an omission of a creditor through an honest mistake and the rights of all parties will not be prejudiced by the amendment." This is not a novel or recent principle. The text cites *In Re McKee*, 165 F. 269 (E.D.N.Y.1908) which states:

As has been indicated, the creditor here is in a position to file his claim, no assets have been distributed, no question of dividends entered into the matter, and the only assets of the estate shown, viz., the counterclaim should be administered by the creditors as represented by a trustee

... To take away the benefits of the bankruptcy law from a bankrupt who has made a mistake which can be corrected without injury to any of the parties concerned, and thus to compel him to wait six years before he can obtain the very benefits intended to be given by the bankruptcy law, is too harsh a construction to place upon the bankruptcy statute, where the bankrupt has been guilty of no fraud and of no intentional laches.

In this case the plaintiff's wife knew of the bankruptcy within approximately one month after the time for filing a claim or excepting to the discharge had expired. She made no effort to request that the time be extended. Instead she initiated actions in state court to compel the debtor, despite the bankruptcy, to pay the claims.[1]

The question then is whether the amendment should be allowed. Rule 1009 provides for amendment and states that

A voluntary petition, list, schedule, statement of financial affairs ... may be amended by the debtors as a matter of course at any time before the case is closed. The debtor shall give notice so the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, the court may order any voluntary petition list, schedule, statement of financial affairs ... to be amended and the clerk shall give notice of the amendment to entities designated by the court.

## III.

There has developed over the years, as evidenced by the *McKee* case, *supra*, an avenue for relief for the debtor who has inadvertently failed to schedule the creditor. The granting of relief hinges primarily on whether there will be prejudice to the creditor. Application of this principle is not consistent. The plaintiff, contending

---

**1.** This is not to say that state court did not have jurisdiction to consider the issue of dischargeability under § 523(a) since the bankruptcy court has exclusive jurisdiction only over suits to enforce debts of a type based on fraud, embezzlement, or violations of fiduciary duty brought under § 523(a)(2), (4), (6). *3a Collier on Bankruptcy* (15th ed.) § 523.13(9). However, the issue before the bankruptcy court is whether the unscheduled debt may, in effect, now be scheduled.

against amendment, cites the recent case of *Laczko v. Gentran, Inc.*, 37 B.R. 676 (9th Cir.1984). The issue in that case was stated broadly: "The question presented is whether the debt can be discharged in a no asset case where the omission of the creditor from the original schedules was a result of mistake or inadvertence and not because of any fraud by the debtor." However, in that case, as distinguished from the instant proceeding, bankruptcy court gave notice that the Section 341 Creditor's Meeting was set for March 17, 1980 and fixed six months from that date as the last date within which to file claims. The debtors received their discharge on June 26, 1980. Approximately one and a half years later but prior to the date the case was closed, the debtor filed a petition to amend his schedule to include a default judgment creditor, Gentran, Inc., which had not been listed in the original schedules. Thereafter, they filed a complaint to determine dischargeability of the Gentran debt. Gentran moved for summary judgment which was granted.

*Laczko* cited *Robinson v. Mann*, 339 F.2d 547 (5th Cir.1964), where the court held that a bankruptcy court under its equity powers could allow amendment of schedules after expiration of the claim filing period under exceptional circumstances where (1) the case is a no asset case, (2) there is no fraud or intentional laches, and (3) the creditor was omitted through mistake or inadvertence. It also cited *Milando v. Perrone*, 157 F.2d 1002 (2d Cir.1946), a leading case advocating strict construction of § 17(a)(3) now § 523(a)(3). *Milando* would not allow the debtor to reopen, where the case was a no asset one, and the claim was inadvertently omitted stating: "... he who seeks the protection of a statutory bar in the payments of his debts be required to bring himself within the provisions of the statutory grant." 157 F.2d at 1004.

The *Laczko* case discussed various cases under the Code refusing to allow amendment even where exceptional circumstances exist where the claims period has expired citing *In Re Iannacone*, 21 B.R. 153, 9

BCD 71 (D.Mass.1982), *In Re Jordan*, 21 B.R. 318, 6th CBC.2d 1222 (E.D.N.Y.1982) and *In Re Brown*, 27 B.R. 151 (N.D.Ohio 1982) and distinguished *In Re Stark*, 717 F.2d 322 (CA 7th 1983), stating

> at first blush *Stark* seems to favor appellants, but can be distinguished. In *Stark* the bankruptcy court under Bankruptcy Rule 203(b), notified creditors that there were no assets and that no claims need be filed unless and until further notice of the opportunity to file claims be given to creditors. Because the date to file claims was (sic) never set, § 523(a)(3) was never triggered.

The court also observed that despite it having been desirable to clarify the uncertainty attending the application of § 17(a)(3) because of case law, "unfortunately Congress did not specifically overrule the exceptional circumstances rule of *Robinson v. Mann, supra.*"

The *Laczko* court concluded by stating that nevertheless it agreed with the strict rule of *Milando v. Perrone, supra*, which refused to follow *Robinson v. Mann, supra*, and strictly construed § 17(a)(3).

In *Stark*, as in this case, the debtor possessed no assets subject to the claims of creditors; all creditors received a notice that it was unnecessary to file a claim, no claim filing period having been set.

The court stated:

> In a no asset bankruptcy where notice has been given pursuant to Rule 203(b), a debtor may reopen the estate to add an omitted creditor where there is no evidence of fraud or intentional design. In this case the creditor has not been harmed in any way, and the debtors have not been required to forfeit any of their benefits under the Bankruptcy Code.

The court concluded that since the creditor, under the circumstances, would have a right to file a claim in the event assets were discovered. The hospital would have an opportunity to file a claim pursuant to Rule 302(e)(4) (presently Bankruptcy Rule 3002(c)(5).

*Stark* was followed by *In Re Davidson*, 36 B.R. 539 (Bankr.Ct.NJ1983). In that case, notice sent to creditors informed them

that pursuant to former Bankruptcy Rule 203(b) claims need not be filed because no dividend from the estate ·was anticipated. The court discussed *Milando* "and its progeny," e.g. *In Re McNeal*, 8 BCD. 114,. 13 B.R. 743 (S.D.N.Y.1981). It stated that the *Milando* rule did not apply for two reasons. First, the six months rule did not apply because of the notice that creditors need not file claims citing *In Re Stark, supra*, and also *In Re Ratliff*, 10 BCD. 352, 354, 27 B.R. 465 (E.D.Va.1983); *Callaham v. Snider*, (*In Re Callaham*) 3 BCD. 501, 502 (Bankr.D.Or.1977). The court also cited *Fourteenth Ave. Security Loan Ass'n v. Squire*, 96 F.2d 799 at 800 (3rd Cir.1938), which indicated that the six month filing rule could be discretionarily set aside where no harm resulted to the creditor which was followed by *Robinson v. Mann*, 339 F.2d 547, 550 (5th Cir.1964).

More importantly, the court after concluding that it had the discretionary power to reopen the case examined the question as to whether it was appropriate to exercise the power. The court, since it was faced with actually reopening the case, cited § 350 of the Bankruptcy Code which provides "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor or for any other cause." The court expanded the discretionary or liberal approach by even declining to follow the "exceptional circumstances" test announced in *Robinson v. Mann, supra*, stating

> I decline to require that the debtor show "exceptional circumstances" and instead adopt the test similar to that recently put forth by the Seventh Circuit *In Re Stark, supra:* In a no asset case when notice has been given pursuant to Bankruptcy Rule 2002(e), a debtor may reopen the estate to add an omitted creditor when the creditor has not been irrevocably harmed and there is no evidence of fraud, intentional design, or reckless disregard for the accuracy.

The court in rejecting the "exceptional circumstances" test also rejected the further requirement that the debtor must show that he was unaware of the debt. Citing § 350 of the Bankruptcy Code which

strongly indicates that its purpose is to 'accord relief to the debtor' the *Davidson* court stated that rehabilitation of the debtor was at least as important as an abstract concern that amendments might be filed at a late date. "In a case such as this, in which a debtor seeks to affect only one creditor, the disruption is slight and is easily outweighed by the need to assure the debtors their fresh start."

## IV

*Milando v. Perrone* was decided by the Second Circuit in 1946. The bankruptcy proceedings were closed in 1942. The application for amendment of the schedules was made three years later, in 1945. The *ex parte* order reopening the estate for amendment of the schedules to include an unscheduled claim was appealed. The court in reversing stated

> This appeal raises a question as to the power of the bankruptcy court to reopen a long closed estate which had shown no assets, for the scheduling and eventual discharge of a claim inadvertently omitted from the original schedules. The claim was omitted because of a lack of knowledge of the judgment on which it was based; and because of a failure to schedule, the judgment creditor received no notice and had no knowledge of the bankruptcy proceedings during their pendency.

The reason for the application to amend in *Milando* was that the unscheduled creditor had started a suit in state court. It should be observed that in 1946, there was no automatic injunction or stay of litigation against the debtor, prior to discharge as provided in 11 U.S.C. § 362, and thereafter, as in 11 U.S.C. § 524(a)(2). The debtor after receiving a bankruptcy discharge, when sued, usually in state court, could only interpose the discharge as an affirmative defense. Recourse to bankruptcy court was available only under the unusual circumstances doctrine of *Local Loan v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). *Milando* demonstrates the reluctance of federal courts to intrude their equitable powers into state court litigation. This reluctance was evident in the court's

recognition of *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), characterizing bankruptcy courts as courts of equity, which could intervene in cases such as this, but then distinguishing the language it cited as *dictum*.

In order to give the debtor's discharge meaningful effect, Congress has, since 1946, provided for the injunctions referred to above, and given the bankruptcy courts exclusive jurisdiction to hear certain disputes relating to discharge, and concurrent jurisdiction as to others. *Milando* and its reasoning has been considerably attenuated by subsequent statutes, procedural rules and case law, all of which follow or strongly suggest the principle that an unscheduled creditor should not have the benefit of a windfall where it appears that he will suffer no prejudice as a result of the omission.

It is therefore ORDERED that the amendment be and it is hereby allowed. Plaintiff is granted thirty days from the date of the filing hereof with the Clerk of this court to serve and file such objections or exceptions to the debtor's discharge under 11 U.S.C. § 727, or § 523 as she may deem appropriate.