**In re Rudolph Anthony BESHENSKY, Debtor.**

**Bankruptcy No. 84–03285.**

United States Bankruptcy Court, E.D. Wisconsin.

Jan. 6, 1987.

---

1. The above constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052.

Bruce A. Lanser, for Debtor.

Thomas W. Druck, Swartzberg & Druck, for William R. Heffernan.

## DECISION

D.E. IHLENFELDT, Bankruptcy Judge.

The issue before the court is whether the debtor may reopen his bankruptcy case, amend his schedules so as to give a correct address for a creditor who was initially listed with an incorrect address, and thereby discharge the debt. The facts are not in dispute.

On August 17, 1984, the debtor filed a petition under chapter 7 of the Bankruptcy Code. The notice of filing sent to creditors on August 31, 1984 included a paragraph indicating that claims should be filed on or before December 24, 1984. In contrast to those instructions, the trustee on September 26, 1984 filed a report stating "that he has made diligent inquiry into the whereabouts of property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by the debtor." The debtor received a discharge on November 26, 1984, and the case was closed on February 28, 1985.

On January 24, 1986, the debtor moved to reopen the case and to amend the schedules so as to show a correct address for William R. Heffernan, a creditor.[1] The court entered an order on January 29, 1986 reopening the case and fixing March 30, 1986 as a deadline for Heffernan to file objections to discharge or to the dischargeability of his claim. Heffernan then filed an objection to the debtor's motion and a hearing was held at which the following facts appeared.

At the time the initial schedules were prepared, the debtor's attorney obtained a credit report. The report listed Heffernan as a creditor but did not list his address. When questioned by a paralegal concerning this debt, the debtor responded that it was for back rent. He then confused it with another creditor to whom he owed back rent and gave the wrong address for Heffernan. The debtor became aware of his mistake in January, 1986, when he was garnished three times by Heffernan.

Heffernan contends that § 523(a)(3)[2] of the Bankruptcy Code bars his debt from being discharged. He does not object to the debtor's discharge having been granted, and does not assert any other ground for nondischargeability. It is undisputed that the error in the original schedules was a result of mistake or inadvertence and not because of any fraud by the debtor.

The situation in this case is similar to that in the case of *In re Stark*, 717 F.2d 322 (7th Cir.1983), wherein the debtors sought to reopen their bankruptcy case in order to amend their schedules and obtain the discharge of a previously omitted creditors' claim. The only significant difference between this case and the *Stark* case is in the form of the initial notice sent out to creditors by the clerk's office.

As permitted by Bankruptcy Rule 203(b) [now B.R. 2002(e)], creditors in the *Stark* case were notified that there were no assets from which a dividend could be paid, that it was unnecessary to file claims, and that further notice of the opportunity to

---

1. 11 U.S.C. § 350(b) provides: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

2. Under 11 U.S.C. § 523(a)(3) a discharge is not granted for any debt that was
   neither listed nor scheduled under section 521(1) of this title, with the name, if known to

the debtor, of the creditor to whom such debt is owed, in time to permit—
   (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing.

file claims would be given in the event that assets should be discovered by the trustee. Holding in effect that § 523(a)(3) would not prevent the discharge of the debt, the Court of Appeals for this circuit stated:

> In a no-asset bankruptcy where notice has been given pursuant to Rule 203(b), a debtor may reopen the estate to add an omitted creditor where there is no evidence of fraud or intentional design.

The *Stark* case has since been cited with approval and followed by numerous other courts. *In re Davidson,* 36 B.R. 539 (Bk NJ 1983); *In re Zablocki,* 36 B.R. 779 (Bk Conn.1984); *In re Rayson,* 39 B.R. 597 (Bk CD CA 1984); *In re Scism,* 41 B.R. 384 (Bk WD OK 1984); *In re Adams,* 41 B.R. 933 (ME 1984); *In re Johnson* 46 B.R. 52 (Bk ED WA 1985); *In re Hood,* 48 B.R. 386 (Bk ND AL 1985); *In re Taylor,* 54 B.R. 882 (Bk ED VA 1985); *In re Smolarick,* 56 B.R. 720 (Bk WD VA 1986); *In re Ali,* 58 B.R. 439 (Bk ED PA 1986); *In re Rosinski,* 759 F.2d 539 (6th Cir.1985).

In the case at bar, the deputy clerk of court who mailed out the initial notice to creditors elected to use an alternative form of notice that contained a direction to file claims, and although Heffernan was listed in the original schedules, he failed to receive the notice because the address shown for him was incorrect. In all other respects, the facts in this case are like those in *Stark.*

Although given the opportunity to do so, Heffernan has expressed no interest in objecting to the debtor's discharge or (apart from his reliance on § 523(a)(3)) to the dischargeability of his own debt. His counsel freely acknowledges that this is a "no asset" case—that he knows of no assets available for distribution to creditors. He says, however, that if he had received the initial notice and been able to then participate in the proceedings, perhaps he might have been able to discover some non-exempt assets. In *Birkett v. Columbia Bank,* 195 U.S. 345, 350, 25 S.Ct. 38, 39–40, 49 L.Ed. 231 (1904), the Court refused to discharge a debt where notice to the creditor came too late to allow "participation in

the administration of the affairs of the estate." However, it was the intent of Congress to overrule *Birkett* when it enacted § 523(a)(3). *In re Adams,* supra; *In re Taylor,* supra.

In the case of *In re Laczko,* 37 B.R. 676 (BAP 9, 1984), a no-asset case, the court refused to follow *Stark* where the initial notice form selected and sent out by the deputy clerk fixed a time to file claims. No other case with that result has been found. This court is one of those that believes "the result of a non-dischargeability case under Section 523(a)(3) should not be keyed to so fortuitous and often meaningless an event as the mailing of an asset notice" instead of a "no-asset" notice by the Clerk's office. *In re Crum,* 48 B.R. 486, 491 (Bk ND IL 1985). As stated in *Rosinski,* 759 F.2d 539, 541, the key inquiry should be whether the creditor has been harmed by being excluded from the schedules and whether or not the omission was due to fraud or intentional design. "Under the Code, only the creditors' rights to participate in a dividend and to obtain a determination of dischargeability are of such importance that their loss mandates exception of a late scheduled debt from discharge." 759 F.2d at 542.

Section 523(a) should not be mechanically applied to deprive a debtor of a discharge in a no asset case where there is no showing of fraud or genuine harm to the creditors. The bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice. *In re Stark,* supra. In the *Stark* case, the court said:

> We conclude that the Bankruptcy Code makes clear that the right of the creditor that is protected by section 523(a)(3) is the right to timely file a proof of claim.

As has been noted, the trustee reported that there were no assets from which creditors could be paid dividends. Accordingly, Heffernan has not been prejudiced by his failure to file a claim due to lack of notice because he would not have

received a distribution anyway. On the facts of this case and in the unlikely event that at some future time non-exempt assets should be discovered, Heffernan is free to file a claim and share pro rata with those creditors who filed their claims timely. Section 726(a)(2)(C)[3] permits a creditor with a late filed claim to nevertheless share in any distribution so long as the creditor did not have notice or actual knowledge of the case in time for timely filing of a proof of claim, and provided administration of the estate has not progressed beyond the point where it would permit payment of such claim. The suggestion that, if given notice when the case was filed, he might have been able to discover non-exempt assets is too speculative to justify denying the discharge of his claim.

■ Because of his failure to receive notice by reason of the debtor's mistake, Heffernan did incur expense in trying to collect the debt. The record does not show what success he had with his garnishment actions, but to the extent he may have failed to recover his costs and attorney fees, he is entitled to reimbursement.

This decision shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

---

3. § 726(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

    (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

    (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

    (A) timely filed under section 501(a) of this title;

    (B) timely filed under section 501(b) or 501(c) of this title; or

    (C) tardily filed under section 501(a) of this title, if—

    (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

    (ii) proof of such claim is filed in time to permit payment of such claim.