In re Allan A. ANDERSON and Hellen Anderson, Debtors.

ROBERT S.C. PETERSON, INC., Plaintiff,

v.

Allan A. ANDERSON, Defendant.

Bankrkuptcy No. 4–82–2171.

Adv. No. 4–86–181.

United States Bankruptcy Court, D. Minnesota.

April 17, 1987.

See also, Bkrtcy., 72 B.R. 495.

Lea M. De Souza, Lang, Pauly & Gregerson, Ltd., Minneapolis, for plaintiff.

Rockford R. Chrastil, Chrastil & Steinberg, Minneapolis, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

ROBERT J. KRESSEL, Chief Judge.

This proceeding came on for hearing on the defendant's motion for summary judgment. Rockford R. Chrastil appeared for the defendant and Leah M. De Souza appeared for the plaintiff. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Based on the evidence, memoranda of counsel, and the file of this proceeding, I make the following:

## MEMORANDUM ORDER

Robert S.C. Peterson, Inc. brought this proceeding on September 12, 1986, to determine the dischargeability of the defendant's debt under 11 U.S.C. § 523. The

defendant, Allan A. Anderson, moves for summary judgment pursuant to Bankruptcy Rule 7056 and Fed.R.Civ.P. 56. The relevant facts are not disputed.

### I.

Anderson is a former employee of Peterson. During the course of his employment, Anderson borrowed money from Peterson on several occasions including $15,904.75 to cover trading losses, $5,177.64 to purchase a new car, and $3,417.73 in general loans for a total of $24,500.12. The $5,177.64 car loan is evidenced by a promissory note dated August 17, 1980. The note purports to give Peterson a security interest in the 1979 Trans Am purchased by Anderson with the loan proceeds. The terms of the note provided that it was to be paid in full by November 17, 1981. However, in November of 1981 Anderson was involved in an accident that substantially damaged the automobile. Because the car was not repairable, Anderson sold it to an auto body shop for $2,000.00. He used the money to pay personal expenses and purchase another car.

On December 1, 1982, Anderson together with his wife Hellen Anderson, filed a joint chapter 7 petition.[1] Peterson is listed in the debtor's A-3 Schedule as follows:

Robert Peterson, Inc.
5050 Excelsior Blvd.
Citizens Bank Bldg.
Minneapolis, MN 55416

The mailing matrix[2] lists Peterson's address as:

Robert Peterson, Inc.
5050 Excelsior Bldg.
Minneapolis, MN 55416 [3]

In fact, neither the address in the A-3 Schedule nor the address in the matrix was Peterson's correct address at the time of filing the petition. The address in the A-3

---

1. Allan Anderson and Hellen Anderson each retained separate attorneys in the bankruptcy case. Hellen Anderson's attorney was primarily responsible for preparing the bankruptcy schedules.

2. Every debtor is required to file a mailing matrix which is used by the Clerk to make

mailing labels which are used to address notices which are sent to all creditors.

3. It seems fairly clear that the person typing the matrix from the schedules lost part of the address by combining parts of the second and third lines.

Schedule was Peterson's correct address prior to September 1981. In September, however, Robert S.C. Peterson, Inc. moved to: 21 Water Street, Excelsior, MN 55431. Allan Anderson knew that Peterson had moved when he filed his bankruptcy petition because he was employed at the company through January 4, 1983.

Notice of the bankruptcy filing was sent by the Clerk to Peterson at the address listed on the mailing matrix. Shortly thereafter, the post office returned the notice to the Clerk for want of a good or sufficient address. On January 3, 1983, the Clerk informed Allan Anderson's attorney that the notice had been returned, but no steps were taken to send Peterson another notice.

Anderson continued to work for Peterson until January 4, 1983. On that date and at Peterson's request, Anderson signed a promissory note for $1,600.00 which represented a portion of Peterson's $3,417.13 claim for general loans. The note provided: "I agree that I owe you $1,600.00 as of this date due to a misrepresentation on my behalf. I will pay you this amount 30 to 45 days after I am licensed with Pagel, Inc." The note was dated January 4, 1983, and signed by Anderson.

On May 24, 1984, Peterson filed a claim with the National Association of Securities Dealers (NASD) to collect the $24,500.12 debt.[4] NASD assigned the case to an arbitration panel. A hearing was held on January 29, 1985, at which time Anderson told the panel and Peterson about his bankruptcy.

On February 22, 1985, the arbitration panel awarded Peterson $24,500.12. Peterson then moved the Hennepin County District Court to confirm the panel's decision. Both parties stipulated in the district court

proceeding that the panel's decision did not address whether Anderson's debt to Peterson had been discharged in bankruptcy.

On June 28, 1985, the Hennepin County District Court denied Peterson's motion to confirm the panel's decision, vacated the panel's February 22, 1985 award, and remanded the claim to the arbitration panel to determine the effect of the bankruptcy discharge. On remand, the panel reinstated its findings as to the amount of the debt, but concluded that the discharge issue is a question for the bankruptcy court to decide.[5]

On September 12, 1986, Peterson filed a complaint in this court to determine whether Anderson's debt is nondischargeable under 11 U.S.C. § 523(a)(3). Anderson filed his motion for summary judgment on February 12, 1987.[6]

## II.

Anderson moves for summary judgment pursuant to Bankruptcy Rule 7056 and Federal Rule of Civil Procedure 56. Rule 56(c) provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56. The party moving for summary judgment, therefore, must show that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Foster v. Johns-Manville Sales*

---

**4.** Allan Anderson previously agreed to arbitrate any claim or dispute that arose during his employment at Robert S.C. Peterson, Inc. according to NASD rules and procedures.

**5.** This is not true. Determination of the dischargeability of a debt under 11 U.S.C. § 523(a)(3) may be made by any forum of competent jurisdiction.

**6.** Anderson also filed a motion on February 17, 1987 to reopen the underlying bankruptcy case

under 11 U.S.C. § 350(b) and Bankruptcy Rule 5010 in order to file an amended Schedule A-3 showing the correct address for Peterson. By separate order dated today, I have denied that motion on the grounds that filing an amended Schedule A-3 for such purposes would have no effect on the determination of the dischargeability of such debt after the discharge has been entered.

*Corp.*, 787 F.2d 390, 391 (8th Cir.1986). The court must view the facts, and all reasonable inferences drawn from the facts, in the light most favorable to the opposing party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608; *Foster*, 787 F.2d at 392; *Stokes v. Lokken*, 644 F.2d 779, 782 (8th Cir.1981).

Peterson claims that summary judgment is inappropriate in this case because there exists three genuine issues of material fact: (1) whether Peterson received proper notice of the bankruptcy filing; (2) whether Peterson had actual knowledge of Anderson's bankruptcy filing before the discharge date; and (3) whether Peterson had actual knowledge of Anderson's bankruptcy filing in time to file a proof of claim, or in time to request a determination of nondischargeability under 11 U.S.C. § 523(a)(2), (a)(4), or (a)(6). I find that none of Peterson's claims raise genuine issues of *material* fact, and that Anderson is entitled to judgment as a matter of law.

Section 523(a)(3) excepts from discharge debts that were:

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request. . . .

11 U.S.C. § 523(a)(3). Official Form 6 requires the name of the creditor and the complete mailing address including zip code. For purposes of this motion the par-

ties agree that Peterson's debt was not properly listed or scheduled.[7] The central issue, therefore, is whether Peterson had notice or actual knowledge of the case in time to file a proof of claim or request a determination of dischargeability.

Section 523(a)(3) is designed to remedy the harm to creditors that results from not being able to participate in the bankruptcy case. *See Stark v. St. Mary's Hospital*, 717 F.2d 322, 324 (7th Cir.1983) (the Bankruptcy Code makes clear that the right of the creditor that is protected by section 523(a)(3)(A) is the right to timely file a proof of claim); *In re Beshensky*, 68 B.R. 452, 454 (Bktcy.E.D.Wis.1987) (the key inquiry should be whether the creditor has been harmed by being excluded from the schedules and whether or not the omission was due to fraud or intentional design). The "harm" caused by not receiving notice of the bankruptcy filing may involve several different aspects depending on the particular case. Creditors are denied the opportunity to: (1) participate in the election of a trustee, (2) ask questions of the debtor at the meeting of creditors, (3) object to the debtor's claims of exempt property, (4) timely file a complaint objecting to discharge, (5) timely file a proof of claim and participate in any distribution, and (6) timely file a complaint to determine whether a debt is dischargeable under § 523(a)(2), (4) or (6). It is important to note that the plain language of § 523(a)(3) only incorporates the last two aspects of possible harm as grounds for finding the debt nondischargeable. For whatever reason, Congress chose not to provide a remedy for creditors whose only loss was the opportunity to elect a trustee, question the debtor at the meeting of creditors, object to the debtor's claims of exempt property or object to discharge. In this case, Peterson has no grounds for a finding of nondischargeability under § 523(a)(3)(A) or § 523(a)(3)(B).

#### (A) *Section 523(a)(3)(A)*

■ Section 523(a)(3)(A) excepts from discharge unscheduled debts unless the

---

7. Since the parties concede this issue, it is not necessary to decide whether Anderson's attempt

at listing and scheduling Peterson's debt is sufficient for purposes of § 523(a)(3).

creditor had notice or actual knowledge in time to file a proof of claim. Anderson filed his petition on December 1, 1982. He received a discharge of his debts on April 29, 1983. It is undisputed that Peterson had actual knowledge of Anderson's bankruptcy filing, but not until the arbitration hearing on January 29, 1985. Had this been an asset case, therefore, Peterson would not have had notice or actual knowledge of Anderson's bankruptcy in time to file a proof of claim.[8] However, Anderson's case was a no-asset case.[9]

Courts have consistently viewed no-asset cases differently under § 523(a)(3) because, in many jurisdictions including Minnesota, proofs of claim are either unnecessary or not accepted for filing. Absent a showing of fraud or intentional omission, § 523(a)(3) does not act to deny a debtor's discharge for not listing or scheduling a creditor in time to file a proof of claim. *Samuel v. Baitcher*, 781 F.2d 1529, 1534 (11th Cir. 1986); *Stark v. St. Mary's Hospital*, 717 F.2d 322, 324 (7th Cir.1983). *See also In re Beshensky*, 68 B.R. 452, 454 (Bktcy.E.D. Wis.1987) and the cases cited therein. The cases reason that since a time is never set to file a proof of claim in a no-asset case, the creditor is not deprived of the opportunity to file a proof of claim within the meaning of § 523(a)(3).[10]

In Minnesota at the time Anderson filed his petition, creditors were not allowed to file proofs of claim in no-asset cases. The General Order dated July 2, 1980, provided in part:

The clerk of this court is hereby authorized and directed to include in such notice, upon the determination and request of the United States Trustee, the following paragraph with respect to appropriate no-asset cases:

'It appears from the schedules of the debtor(s) that there will be no assets from which any dividend can be paid to creditors. Therefore any proof of claim received will not be filed or allowed in this case except by order of the court on motion for cause shown. However, if it subsequently appears that there are assets from which a dividend can be paid, creditors will then be notified by mail and given an opportunity to file proofs of claim within a time to be fixed by the court.'[11]

Therefore, absent a showing of fraud or intentional omission, Anderson's debt was discharged.

Peterson's complaint alleges that Anderson certified under penalty of perjury that the information contained in the schedules was true and correct to the best of his knowledge, when in fact, Anderson was fully aware of Peterson's new address. Presuming this to be true, it does not establish a nondischargeable debt under § 523(a)(3)(A). There is no evidence that Anderson fraudulently or intentionally listed Peterson's address incorrectly. The person who prepared the A–3 Schedule was employed by his wife's attorneys and used the address for Peterson that was listed in the local phone book or in the Secretary of

---

8. Left for another day is the question of the dischargeability of a debt under § 523(a)(3)(A) where there has been a distribution of less than 100% of allowed claims.

9. Virtually every case has some assets. However, in the bankruptcy vernacular, a case in which all assets are exempt or encumbered and there will be no distribution to creditors is referred to as a no-asset case.

10. This could be referred to as the "no harm; no foul" rule.

11. In October 1985, local rules which superseded all general orders were adopted for the bankruptcy court in Minnesota. Local Rule 114(a) provides:

If the notice of the meeting of creditors includes a statement to the effect that there are no assets from which a dividend can be paid under Rule 2002(e), then no claims shall be filed in the case, unless upon motion and for cause shown the court orders a particular claim filed, and the clerk shall return any claim received to the creditor with an explanation of this rule, until and unless a notice is thereafter sent that claims may be filed under Rule 3002(c)(5).

Except for refusing to file and returning unnecessary proofs of claim in a no-asset case, Rule

State's office.[12] It is equally as clear that the use of "Bldg." rather than "Blvd." on the matrix was a typographical error. The fact that Anderson did not discover the errors before he signed the certification does not establish fraud justifying a finding of nondischargeability under § 523(a)(3)(A).

Moreover, this question is ripe for summary judgment. The evidence does not give rise to a genuine issue of *material* fact. Peterson argues that whether it received "proper notice" is a genuine issue of fact that precludes summary judgment. However, proper notice is irrelevant in this proceeding. The key inquiry is notice or actual knowledge in time to file a proof of claim. Peterson also argues that whether it had actual knowledge in time to file a proof of claim is a genuine issue of material fact that precludes summary judgment. The date Peterson had actual knowledge is a material fact, but it is not at issue in this case. Both parties agree that Peterson had actual knowledge at least by the January 29, 1985 arbitration hearing. Whether that date is within the time to timely file a proof of claim is an issue of law. As I concluded earlier, Peterson had actual knowledge of Anderson's bankruptcy in time to file a proof of claim. Therefore, Anderson's motion for summary judgment with respect to Peterson's § 523(a)(3)(A) claim is appropriate.

### (B) *Section 523(a)(3)(B)*

■ Peterson's second ground for relief is § 523(a)(3)(B). That section deals specifically with debts "of a kind specified in paragraph (2), (4), or (6) ..." of § 523(a). 11 U.S.C. § 523(a)(3)(B). If the debt would be nondischargeable under one of those three fraud-related exceptions, then the creditor must have notice or actual knowledge of the bankruptcy case in time to file a proof of claim *and* in time to request a determination of dischargeability. In other words, if the debt is of a kind specified in § 523(a)(2), (4) or (6), then Peterson would have had to have actual knowledge of the

case no later than March 29, 1983, the last date set for filing complaints to determine dischargeability of debts under those subsections. Of course, a creditor must first show that the debt is nondischargeable under § 523(a)(2), (a)(4), or (a)(6).

Peterson alleges that Anderson converted the automobile pledged as security for the $5,177.64 loan and converted funds promised to Peterson to repay the $1,600.00 loan advanced to pay Anderson's rent. The affidavit of Allan Anderson explains the automobile transaction as follows:

> In November, 1981, I was in an accident which destroyed the car. Robert Peterson was fully aware of the accident at the time. Since the car could not be repaired, I sold it to the body shop for approximately $2,000.00. I used this money to pay personal expenses and to purchase another car. Robert Peterson was aware that I had sold the car to the body shop. At the time, a percentage of the commissions I was earning was being used to pay off my debt to Robert S.C. Peterson, Inc. Robert Peterson never claimed that I had wrongfully or fraudulently converted the proceeds from the sale of the damaged Trans Am to my own use prior to the termination of my employment there.

The affidavit goes on to explain the circumstances surrounding the $1,600.00 loan and signing of the promissory note on January 4, 1983:

> On or about January 4, 1983, I met with Robert Peterson, the president of Robert S.C. Peterson, Inc., to submit my official resignation. I know that Robert Peterson was angry at me because I had not repaid a $1,600.00 loan which he had given me for the purpose of paying my rent in October, 1982. Peterson said that I had told him I would repay the $1,600.00 a week or so after he gave it to me. I agreed that this is what I had said and what I had intended. I told him that I simply had not received the money to

114(a) does not differ materially from Bankruptcy Rules 2002(e) and 3002(c)(5).

12. At the time Anderson's petition was filed, Peterson's registered office was that shown in the phone book and on the A-3 Schedule.

repay him. Peterson then asked me to write a note saying that I owed him the $1,600.00 on that date due to a misrepresentation. I wrote such a note under his direction and gave it to him at that time.

Peterson does not dispute Anderson's explanations, and offers no evidence other than the January 4, 1983, promissory note to substantiate its claim of fraud.

Federal Rule of Civil Procedure 56(e) requires a party opposing a motion for summary judgment to show specific facts creating a genuine issue of fact.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e). Peterson has not met its burden of proof. Unsubstantiated allegations of fraud are insufficient to defeat Anderson's motion for summary judgment with respect to § 523(a)(3)(B).

### III.

 As a final matter, Peterson requests $6,666.15 in costs and attorney's fees. It argues that Anderson should be required to pay the expenses because they were incurred as a result of Anderson's negligence in preparing his bankruptcy schedules. Peterson has no contractual right to attorney's fees and has not demonstrated cause for an award of attorney's fees under 28 U.S.C. § 1920.[13] Furthermore, there is no evidence (e.g., a summary of services and time) to support an award for any other costs or fees.

THEREFORE, IT IS ORDERED:

1. Allan A. Anderson's motion for summary judgment is granted.

2. Allan A. Anderson's debt to Robert S.C. Peterson, Inc. was discharged by the discharge entered on April 29, 1983.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

13. Under some circumstances an award of costs and attorneys' fees might be appropriate. However, Anderson raised his discharge as a defense as soon as Peterson commenced its collection efforts and thus no award is appropriate.