**In re David TAYLOR, and Barbara Ann Taylor, Debtors.**

**Bankruptcy No. 94–03900–6J7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Oct. 29, 1998.

Robert B. Branson, Orlando, FL, for debtor.

Thomas F. Egan, Orlando, FL, for creditor.

Gene T. Chambers, Orlando, FL, trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON AMENDED MOTION FOR REHEARING

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on September 29, 1998, on the creditor's, First Bank of Coastal Georgia's (the "Movant"), Amended Motion for Rehearing (the "Motion") (Doc. No. 28). On June 24, 1998, David Taylor ("Taylor") and Barbara Ann Taylor (collectively, the "Debtors") filed a Motion to Reopen their Chapter 7 case for the purpose of amending their schedules to add the Movant as a creditor and discharge the claim (Doc. No. 19). On August 17, 1998, an Order Conditionally Granting Motion to Reopen Case was entered (the "Order") (Doc. No. 24). In the Motion, the Movant seeks reconsideration of the Order which permitted this case to be reopened. Based on the pleadings and the evidence and considering the demeanor of the witnesses, the Motion is granted.

*Motion to Reopen Case.* During the late 1980's and early 1990's Taylor and a gentleman named Gerald Stuart ("Stuart") were partners in a business venture which purchased approximately 30 units of real property in Savannah, Georgia. In order to finance these land purchases, Taylor executed several promissory notes and was personally liable for these debts. One of these land purchases was related to the promissory note at issue in this case which was originally issued by SunTrust Bank, N.A. for $22,203.59 (the "Note") and signed by Taylor.

When Taylor moved from Savannah in 1990, Stuart assumed full responsibility for leasing the various properties. Because Taylor was no longer actively participating in the business venture, he relinquished his interest in the properties to Stuart who, in exchange, agreed to refinance the debt encumbering the property so that Taylor was no longer personally liable. Taylor transferred title to all of the properties to Stuart by quitclaim deed in April, 1992. Taylor assumed that Stuart had refinanced the underlying debts, and he had no further personal liability. However, Taylor never verified his assumption.

On July 28, 1994, the Debtors filed a liquidating bankruptcy under Chapter 7 of the Bankruptcy Code.[1] No debts associated with the Savannah properties were listed. The Chapter 7 case was a no-asset case. No distribution was made from the estate. On December 20, 1994, the Debtors received a discharge (Doc. No. 16), and, on January 12, 1995, the case was closed (Doc. No. 17).

Three years later, in April, 1998, the Movant purchased the Note from SunTrust. Payments under the Note were delinquent, and the Movant started a state lawsuit against Taylor to collect the balance due of approximately $10,000. In response to the Movant's collection actions, Debtors filed their Motion to Reopen Case in order to amend their schedules in the Chapter 7 case to include the Movant as a creditor (Doc. No. 19). At the evidentiary hearing on the Motion to Reopen, held August 4, 1998, Taylor testified that, after he quitclaimed the Savannah property to Stuart in 1992, he believed that the entire debt was refinanced and that he was no

---

1. Unless otherwise noted, all references to statutory sections refer to Title 11 of the Unit-    ed States Code.

longer liable on any of the notes, including the Note at question here. He also testified that he did not become aware of his liability on the Note until the Movant notified him in May, 1998. Based on this evidence, the Court granted the Debtors' Motion to Reopen.

Movant then filed the current Motion contending that reopening the case was not appropriate due to the prejudice which would result to the Movant. At the hearing on the Motion, the Movant established that the Debtors did in fact know that Taylor was liable on the Note as early as December, 1997, four months before the Movant purchased the Note. Specifically, in December, 1997, SunTrust Bank, the holder of the Note at that time, informed the Debtors that the loan was in default. The Debtors then paid SunTrust Bank $1261.24 to bring the loan current.[2] Movant's Exh. 1. Movant also submitted evidence that at the time Movant purchased the Note, they were not aware of any delinquencies in payment.

Based on this new evidence, Movant argues that the Court erred in reopening the case. Movant argues that Debtors may not reopen their case to add an omitted creditor if the creditor would be prejudiced. Furthermore, the Movant argues that the Court's prior finding that any prejudice suffered by the Movant was due to the Movant's own actions was not supported by the evidence.

▇▇▇ *Standard for Reopening Case to Add Omitted Creditor.* Section 350 of the Bankruptcy Code provides that the court may reopen a case based on equitable principles in order to "administer assets, to accord relief to the debtor or for other cause." A debtor will be allowed to reopen his/her case to schedule an omitted creditor as long as (i) the failure to schedule the creditor was the result of an honest mistake and not fraud or intentional design, and (ii) the creditor is not prejudiced by

the reopening. *Samuel v. Baitcher (In Matter of Baitcher),* 781 F.2d 1529, 1534 (11th Cir.1986); *Rosinski v. Boyd (In re Rosinski),* 759 F.2d 539, 541 (6th Cir.1985).

*Honest Mistake by Debtors.* Taylor testified at both hearings that he believed all the debts relating to the Savannah properties were refinanced in 1992. Prior to filing bankruptcy, the Debtors were not aware of his continuing liability on the Note. Clearly, the Debtors were not aware that the debt on the Note existed prior to filing their bankruptcy and receiving a discharge in 1994. As such, the Debtors exhibited no intentional design or fraudulent effort in omitting the Movant from their schedules. Therefore, under the test articulated by the Eleventh Circuit Court of Appeals in *Baitcher,* the Debtors are entitled to reopen this case to add the omitted creditor as long as the creditor is not prejudiced.

*Movant Will Suffer Prejudice.* The Movant contends, however, that reopening the case will result in prejudice to them. The Movant argues that it bought the Note without knowledge of the Debtors' bankruptcy. Allowing the Debtors to reopen this case and add the Movant as a creditor in their schedules would mean that any monies the Movant paid to buy the Note from SunTrust or to pursue collection actions against Taylor is not recoverable and is lost.

Therefore, the issue is whether the Movant has suffered prejudice sufficient to warrant denying the Debtors' Motion to Reopen. Traditionally, bankruptcy courts have held that prejudice to the creditor sufficient to prevent the reopening of the debtor's case only exists when the creditor has lost the right to receive a dividend or to obtain a determination of dischargeability in connection with the bankruptcy case. *Rosinski,* 759 F.2d at 542; *In re Berry,* 190 B.R. 486, 488 (Bankr.S.D.Ga.1995);

---

**2.** The check was issued from the bank account of a publication owned by Mrs. Taylor. The Debtors left the amount on the check blank, and a SunTrust employee filled in the amount necessary to bring all payments current.

*Soult v. Maddox (In re Soult),* 894 F.2d 815 (6th Cir.1990).

Recently, however, a majority of courts have expanded the definition of prejudice to include costs and fees expended by the creditor before the creditor became aware of the bankruptcy. *See, e.g. La Bate & Conti, Inc. v. Davidson (In Matter of Davidson),* 36 B.R. 539, 545 (Bankr.D.N.J. 1983) (holding that a third type of prejudice exists when the creditor continues collection efforts unaware of the bankruptcy). Most commonly, the courts have found that the attorney's fees and costs spent by the creditor in trying to collect the debt are sufficient prejudice to deny reopening the case. *See In the Matter of Bianucci,* 4 F.3d 526 (7th Cir.1993); *Hawkins v. Landmark Finance (In re Hawkins),* 727 F.2d 324 (4th Cir.1983); *In re Wilkins,* 185 B.R. 624 (Bankr.M.D.Fla. 1995); *Davidson,* 36 B.R. at ,545. *But see In re Jones,* 174 B.R. 67 (Bankr.N.D.Ohio 1994); *In re Mitchell,* 47 B.R. 209 (Bankr. N.D.Tex.1985). Some courts have allowed debtors to reopen their case if they cure the default by paying the fees and costs. *See Wilkins,* 185 B.R. at 626; *Davidson* 36 B.R. at 545. Others have simply refused to reopen the case. *See Bianucci,* 4 F.3d at 529; *Hawkins,* 727 F.2d at 327.

Other bankruptcy courts have expanded the definition of prejudice even further. In *In the Matter of Caicedo,* 159 B.R. 104, 107 (Bankr.Conn.1993), the Bankruptcy Court in Connecticut found that the creditor was prejudiced by an eight year delay in reopening the case that increased the creditor's costs in defending a lien avoidance proceeding.[3] The Bankruptcy Court held that the "(a)dditional expense imposed on a creditor to defend has to be a relevant factor in assessing prejudice." *Id.*

No case specifically discusses the situation where the omitted creditor actually purchased the debt years after the debtor received a bankruptcy discharge. However, in a similar case, the Bankruptcy Court for the Southern District of Ohio found that reopening the debtor's case would prejudice the creditor. *In re Harper,* 72 B.R. 211, 213 (Bankr.S.D.Ohio 1987). In *Harper,* the Bankruptcy Court held that the omitted creditor would be prejudiced by reopening the case when the creditor purchased several computers in reliance on the debtor's obligation to reimburse him. The debtor and creditor had an agreement whereby the creditor agreed to pay a 60 month lease on computer equipment with BancOhio, and the debtor agreed that, when the lease was completed, the debtor would take title to the equipment and sell it back to the creditor at the lesser of $50 or the fair market value of the equipment. *Id.* at 211. The debtor filed bankruptcy before the end of the lease and did not inform the creditor or list him on the schedules. *Id.* Based on the agreement, the creditor purchased the equipment and, at the end of the lease, sought reimbursement from the debtor. *Id.* When the debtor did not pay, the creditor received a judgment in state court. *Id.* Afterward, the creditor was notified of the prior bankruptcy, and the debtor moved to reopen the case. *Id.*

The Bankruptcy Court for the Southern District of Ohio held that the creditor suffered prejudice by purchasing the equipment without knowledge of the debtor's bankruptcy and that, whether the debtor's failure to inform the creditor of the bankruptcy was intentional or inadvertent, the debtor could have prevented the prejudice by promptly informing the creditor of the bankruptcy case. *Id.* at 213. Accordingly, the debtor's motion to reopen the case was denied. *Id.*

■ Clearly, in *Harper,* the debtor was aware of its liability to the creditor before the bankruptcy case was closed. In this case, the Debtors were not aware of the liability on the Note until December 1997,

---

**3.** In *Caicedo,* the court held that the creditor would have the added expense of obtaining a property appraisal based on 1985 values and confirming prior liens as of the same date.

long after the discharge was entered and the case was closed. However, the good faith of the debtor does not excuse the harm to the creditor that results from the debtor's lack of diligence. *See Id.* at 213.

The Debtor in this case did not intentionally or fraudulently fail to list the Movant as a creditor. However, as in *Harper*, the Movant was prejudiced by the Debtors' failure to timely reopen their case. The Debtors could have avoided the prejudice by exercising diligence in filing their Motion to Reopen Case. The Debtors became aware that Taylor was liable on the Note in December, 1997. Four months passed before the Movant purchased the Note. Only after the Movant began legal proceedings to collect on the Note did the Debtors move to reopen their case. Clearly, if the Debtors had acted diligently once they were aware of the debt, they could have prevented the harm to the Movant.

Here, the Debtors did not act with any fraudulent design, but they did act carelessly and with a lack of diligence which caused direct harm to the Movant. It would not be equitable to allow the Movant to suffer when the Debtors through the exercise of care and diligence could have prevented the harm. Therefore, because the reopening of the Debtors' case would prejudice the Movant, the Motion is granted. The Court's Order Conditionally Granting Motion to Reopen Case (Doc. No. 24) is vacated, and the Debtors' Motion to Reopen Case is denied. A separate order consistent with these Findings of Fact and Conclusions of Law shall be entered.